**Donna ROBERTSON, Plaintiff,**

v.

**Patrolman F. JOHNSTON, and Patrolman W. Sherer, individually, and as representative of the New Orleans Police Department, and the City of New Orleans, Defendants.**

**Civ. A. No. 15761–B.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 19, 1966.

---

Bruce C. Waltzer, Jack Peebles, Smith, Waltzer, Jones & Peebles, New Orleans, La., for plaintiff.

Steven R. Plotkin, Joseph W. Nelkin, Plotkin, Nelkin & Alvarez, New Orleans, La., for defendants Franklin Johnston and William A. Sherer.

Alvin J. Liska, City Atty., Beuker F. Amann, Asst. City Atty., for defendants New Orleans Police Department and City of New Orleans.

FRANK B. ELLIS, District Judge.

Harry's Steak House does not serve steaks or any other type of food. It is an establishment which provides its customers with alcoholic and other beverages for consumption on the premises; at times, a small band, often accompanied by a singing group, provides entertainment and music for dancing. Harry's is located in a predominantly Negro neighborhood and is patronized almost exclusively by Negroes.

Plaintiff and a friend, both white women, were frequenting Harry's on the evening of June 29, 1965. Defendants Sherer and Johnston were, and are, patrolmen in the New Orleans Police Department. While on routine patrol that evening, the police officers, both white men, observed plaintiff inside Harry's and, according to the complaint, advised her that Harry's was no place for a white woman.

Plaintiff remained at Harry's, and was again observed there by the patrolmen, some two hours later. After two more hours passed, the patrolmen made another such observation; at that time, they arrested plaintiff and her friend for vagrancy and removed them from Harry's.

Plaintiff bases her suit solely on Title 42 U.S.C.A. §§ 2000a to 2000a–6, the public accommodations provisions of the Civil Rights Act of 1964 (Public Law 88–352, July 2, 1964, §§ 201–207). The pertinent provisions of that act are:

§ 2000a(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accomodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

(1) * * *

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) * * *

(c) The operations of an establment affect commerce within

the meaning of this subchapter if \* \* \* (2) in the case of an establishment described in paragraph (2) of subsection (b) of this section, it serves or offers to serve interstate travelers or a substantial portion of the food which it serves, or gasoline or other products which it sells, has moved in commerce; (3) in the case of an establishment described in paragraph (3) of subsection (b) of this section, it customarily presents films, performances, athletic teams, exhibitions, or other sources of entertainment which move in commerce; \* \* \* For purposes of this section, "commerce" means travel, trade, traffic, commerce, transportation, or communication among the several States \* \* \*.

(d) Discrimination or segregation by an establishment is supported by State action within the meaning of this subchapter if such discrimination or segregation (1) is carried on under color of any law, statute, ordinance, or regulation; or (2) is carried on under color of any custom or usage required or enforced by officials of the State or political subdivision thereof; or (3) is required by action of the State or political subdivision thereof.

§ 2000a–2 No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any persons of any right or privilege secured by section 2000a or 2000a–1 of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a–1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a–1 of this title.

§ 2000a–3 (a) Whenever any person has engaged \* \* \* in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventive relief \* \* may be instituted by the person aggrieved \* \* \*.

§ 2000a–6 (a) The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this subchapter \* \* \*.

Thus, to maintain this action, plaintiff must show, first, that Harry's is one of the types of establishments covered by § 2000a(b)(2) or (3), *and* second, *either* that the operations of Harry's affect commerce as defined by § 2000a (c), *or* that discrimination or segregation by Harry's is supported by state action, as defined by § 2000a(d).

*Type of establishment*

Harry's is not covered by § 2000a (b)(2). A bar or nightclub that serves only drinks is not a "restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises." Congress limited the coverage of this subsection to establishments selling food. There is no reason to believe that Congress could not have constitutionally enacted a broader statute, covering establishments selling only drinks. It did not. Senator Magnuson, floor leader for the public accommodations subchapter of the Civil Rights Bill made it clear that a bar, as such, would not be covered by this subsection of the Bill.[1] On this point, this Court sub-

---

1. "A bar, in the strict sense of that word, would not be covered by Title II, since it is not 'principally engaged in selling food for consumption on the premises.'" 110 Cong.Rec. 7406.

scribes to the holding and reasoning of what are, apparently, the only reported cases to consider this problem, Tyson v. Cazes, 238 F.Supp. 937, 942 (E.D.La., Baton Rouge Div., 1965) and Cuevas v. Sdrales, 344 F.2d 1019 (10th Cir. 1965), and holds that Harry's Steak House, as a bar or nightclub serving only drinks, is not included within the scope of § 2000a(b) (2).

Plaintiff argues, however, that a bar or nightclub presenting entertainment that has moved in interstate commerce is within the scope of § 2000a(b)(3). The problem of statutory interpretation that confronts the Court is thus: is a so-called nightclub or cabaret included within the designation "motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment."

■■ Any determination of the scope of the general phrase "other place of exhibition or entertainment" must be guided by the interpretative principle *ejusdem generis:* when specific terms in a statute are followed by general terms, the general terms are limited to matters similar to, or of the same general kind or class as, those specified.[2] But the rule does not require that the general provisions be limited in scope to the identical things specifically named; rather, the purpose of this aid to construction is to prevent the general words from extending the operation of the statute into a field not really intended.[3] Thus "place of entertainment" is not to be construed to mean "place of enjoyment", but rather must be limited at least to "place where performances are presented."

■ There is no indication that Congress used the phrase in an artful sense that would require that it be given some other than its normal meaning. That normal meaning, limited to the general class of the specific facilities listed, includes, in the opinion of the Court, a nightclub or cabaret. Legislative history supports this conclusion. Senator Magnuson said "a nightclub might also be covered under section [2000a(b)(3)] if it customarily offers entertainment which moves in interstate commerce."[4]

Thus, the Court finds that Harry's Steak House is a place of entertainment within the meaning of § 2000a(b)(3) of the Civil Rights Act of 1964. Given this finding, it is still incumbent upon plaintiff to show that the operations of Harry's affect commerce, or that discrimination or segregation by it is supported by state action.

*Operations affecting commerce*

■■ Section 2000a(c)(3) states that the operations of a place of entertainment affect commerce when it customarily presents sources of entertainment which move in commerce. According to a plain reading of the statute, the determinative feature is not the entertainment presented at the time an incident occurs, but the customary entertainment provided. If the customary entertainment moves in commerce, then the place of entertainment is within the coverage of the statute at all times; if the customary entertainment does not move in commerce, then the place of entertainment is never covered.

The evidence presented by the plaintiff does not persuade the Court that the operations of Harry's affect commerce. First, on five nights of the week, Harry's presented no entertainment. It might well be that this is determinative—what occurs 71% of the time could be considered the customary thing. Second, considering the sources of entertainment presented on Monday and Wednesday nights: the evidence showed that the manager of Harry's allowed a small band, Ronnie Kay's Band, and a singing group, the Tick Tocks, to rehearse and perform at Harry's on those two nights. Harry's

2. See United States v. Alpers, 338 U.S. 680, 683, 70 S.Ct. 352, 94 L.Ed. 457 (1950); Black's Law Dictionary, p. 608 (4th ed., 1951).

3. Phillips v. Houston National Bank, Houston, Texas, 108 F.2d 934, 936 (5th Cir. 1940).

4. 110 Cong.Rec. 7407.

did not pay these entertainers, and it appears they were more interested in the opportunity to rehearse and in the enjoyment that performing together gave them than in monetary gain. Donations were taken at the door and the small kitty garnered was split among the members of the band and the singing group.

All of these performers live in New Orleans, and the groups do almost all of their performing in the city. On one occasion, some of the singers performed in Nebraska, but that was after they had moved their homes to that state for reasons unconnected with entertaining. It also appears that, in previous years, the Tick Tocks, then composed of different members, performed in other states, but, as to the present time, these interstate connections are most tenuous. Without discounting the testimony as to a more recent six-day out-of-state tour that some members of the singing group made, the Court must conclude that the Monday and Wednesday entertainment presented by Harry's is essentially local in nature, and thus cannot be said to "move in commerce."

Either by considering the week as a whole, or, more favorably to plaintiff, by considering just Monday and Wednesday, the Court reaches the same conclusion: Harry's does not customarily present sources of entertainment which move in commerce.

*Discrimination or segregation supported by state action*

As the operations of Harry's do not affect commerce, Harry's cannot be deemed a place of public accommodation unless discrimination or segregation by it is supported by state action.

■ Plaintiff, in her complaint and argument, was most anxious to show that the police officers were enforcing a custom which discourages association between white women and Negro men. Apparently she desired to thus bring her complaint within the scope of § 2000a(d), by showing that segregation was supported by state action, since it was carried on under color of a custom required or enforced by officials of a political subdivision of a state, and in this manner cause Harry's to be deemed a place of public accommodation, under the fourteenth-amendment-derived arm of the law. In attempting this, she misread the statute, which states that an establishment listed in § 2000a(b) will be deemed a place of public accommodation "if its operations affect commerce, or if discrimination or segregation *by it* is supported by State action," and which prefaces the definition of "support by state action" with "discrimination or segregation *by an establishment* is supported by state action." (Emphasis added.) The question of a custom or usage enforced by police officers is not then reached unless it is shown that the establishment itself engaged in discrimination or segregation.

The conclusion is inescapable, and, in fact, plaintiff's counsel was willing to stipulate (transcript page 13), that the management of Harry's does not engage in discrimination or segregation. Not one word of allegation or proof even implied that any discriminatory policies or practices on the part of the management existed. The clear indication is that Harry's readily accepted plaintiff as a customer: she was there at least four hours on the evening in question, she engaged in dancing while there, and there is no indication that the manager or proprietor ever asked her to leave. Further, plaintiff did not sue the manager or proprietor of Harry's. Her quarrel is only with the action of the police.

■ Therefore, as Harry's does not engage in discrimination or segregation, it cannot be said, regardless of what the policemen are alleged to have done, that "discrimination or segregation by [Harry's] is supported by state action." This being true, any testimony as to actions of the police or as to a custom of discrimination or segregation is, by the plain language of the statute, irrelevant. For this reason, the Court refused to allow any such testimony on this point.

Plaintiff, in her complaint and argument before the Court, expressly and

carefully based her suit solely on the ground that Harry's is a place of public accommodation within the scope of the Civil Rights Act of 1964, and that therefore the police officers engaged in actions prohibited by § 2000a–2 by depriving her of, intimidating her to interfere with, or punishing her for exercising, her rights secured by § 2000a. Harry's is not a place of public accommodation; plaintiff is, then, secured no rights by § 2000a, and § 2000a–2 does not effect any prohibition against the police officers. The result is that the suit must be dismissed for failure to state a claim upon which relief can be granted; a further result is that §§ 2000a–3(a) and 2000a–6 (a) do not operate to give this Court jurisdiction of the subject matter of this suit, and it must be dismissed for lack of jurisdiction.