Charles L. EVANS, J. L. Nixon, Thomas Harris

and

E. K. Ready, Plaintiffs,

v.

LAUREL LINKS, INC., Defendant.

Civ. A. No. 4252.

United States District Court
E. D. Virginia.

Richmond Division.

May 4, 1966.

Roland D. Ealey, Herman T. Benn, Lawrence Douglas Wilder, Henry L. Marsh, III, Richmond, Va., for plaintiffs.

William P. Hanson, Hanson & Hanson, Richmond, Va., for defendant.

## MEMORANDUM OF THE COURT

BUTZNER, District Judge.

The plaintiffs brought this class action to require the defendant to permit Negroes to play golf on a commercial course, which is open to all members of the public except Negroes.

The plaintiffs claim relief under Title II of the Civil Rights Act of 1964 relating to public accommodations, 42 U.S.C. § 2000a et seq. No question of the constitutionality of the Act has been raised. The case turns upon the construction of the statute. The court concludes that the business conducted by the defendant is a place of public accommodation whose

operations affect commerce and that the plaintiffs are entitled to the relief which they seek.

The facts have been stipulated by the parties as follows:

"Plaintiffs Charles L. Evans, J. L. Nixon, Thomas Harris and E. K. Ready are Negroes and citizens of the United States and State of Virginia. All of the plaintiffs reside in Richmond, Virginia.

"Laurel Links, Incorporated, a domestic corporation incorporated under the laws of Virginia, commenced operations in May, 1927. The eighteen hole golf course operated by the corporation is located in Glen Allen, Virginia, approximately seven miles northwest of the City of Richmond and about four blocks off of State Route #33. The course is situated at a point 5 miles from U.S. Highway #301 5½ miles from U.S. Highway #95 and 3 miles from State Route #250. There are no hotels or motels adjacent to or in any way connected with the golf course. There is a two-story building on the premises which is used as a clubhouse. On the first floor of this building there is a golf shop, golf repair shop, lunch counter, and locker room. On the second floor there is a club room which is used by the Laurel Golf Association for its meetings and social affairs. There are three full time employees who run the clubhouse. The lunch counter is at the entrance to the clubhouse. There are seven stools at the counter and five tables with chairs. The complete menu of the lunch counter during the year of 1965 was as follows: beer, solf drinks, coffee, milk, sandwiches, cakes, candy, peanuts, ice cream, and several other miscellaneous items. The total of gross receipts for Laurel Golf Course during the year 1965 was $193,-720.20 of which $27,568.00 or 15% was taken in by the lunch counter. All food and beverage is purchased locally by the management. A portion of the food served at the lunch counter has moved in interstate commerce.

"The lunch counter is operated for the convenience of persons who play golf and their guests. However, it serves all members of the general public (including Negroes) when they seek service there. The lunch counter is located within the premises of the golf course.

"The golf course, which has been in operation for more than thirty-five years, is open to all of the public—except persons of the Negro race. During each of the five years preceding 1966, four or more tournaments were held at Laurel including the Gentleman Jim Tournament which is sponsored by a local radio station. Recently, the Pro-Senior Tournament, sponsored by the Virginia State Golf Association, was held at Laurel Golf Course.

"Laurel Links, Incorporated, also permits the Laurel Golf Association (an independent social organization limited to seventy-five dues paying members) to conduct tournaments and team matches at the Laurel Golf Course.

"The team matches are on a home and home basis which means the Laurel Golf Association team (usually about thirty men) will travel, once each year, to Hampton, Virginia, Ocean View, Virginia and to East Potomac Golf Course, Washington, D. C. Likewise, once each year, these out-of-town teams will come to Laurel.

"The Golf Shop which is located at Laurel Golf Course sells a general line of golf equipment, i. e.: clubs, balls, gloves, shoes, shirts, and other items most of which are manufactured outside of the State of Virginia and have moved in interstate commerce. The Golf Shop and the Golf Repair Shop are open to all members of the public. The Golf Repair Shop is operated by E. A. Sage an employee of the Corporation."

The defendant's charter provides in part that the corporate purposes are:

"To construct, operate, maintain, promote, manage, and take or let or lease golf courses, amusement parks,

athletic fields, games and contests, social, country and athletic clubs, moving picture and other theatres and houses of amusement, and other similar enterprises and activities.

\* \* \* \* \* \*

"To construct, operate, maintain and manage hotels, inns, sanitoriums, seasonal resorts, restaurants and other places for the entertainment, housing, feeding and amusement of patrons and guests."

The defendant has not constructed or operated any theater, hotel or inn. Most of the people who use the defendant's facilities live in Virginia.

Pertinent provisions of the Civil Rights Act of 1964 are:

"42 U.S.C. § 2000a. *Prohibition against discrimination or segregation in places of public accommodation—Equal access*

"(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

"(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

\* \* \* \* \* \*

"(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

"(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

"(4) any establishment (A) \* \* (ii) within the premises of which is physically located any such covered establishment \* \* \*

"(c) The operations of an establishment affect commerce within the meaning of this subchapter if \* \* \* (2) in the case of an establishment described in paragraph (2) of subsection (b) of this section, it serves or offers to serve interstate travelers or a substantial portion of the food which it serves \* \* \* has moved in commerce; (3) in the case of an establishment described in paragraph (3) of subsection (b) of this section, it customarily presents films, performances, athletic teams, exhibitions, or other sources of entertainment which move in commerce \* \* \*"

■ The operations of the lunch counter at the golf course affect commerce. The Act provides that an establishment affects commerce if it serves or offers to serve interstate travelers. 42 U.S.C. § 2000a(c) (2). The court finds that the lunch counter serves and offers to serve the general public, including interstate travelers. It serves and offers to serve players who have traveled here from outside the State of Virginia.

■ The location of the lunch counter on the premises brings the entire golf course within the Act under 42 U.S.C. § 2000a(b) (4) (A) (ii) which provides that any establishment within the premises of which is located a covered establishment is a place of public accommodation. See H.R.Rep.No. 914, 88th Cong., 2d Sess. (1964) (Additional Majority Views, Hon. Robert W. Kastenmeier) U.S.Code Cong. & Admin.News, pp. 2409, 2410 (1964); Rasor, Regulation of Public Accommodations Via the Commerce Clause—The Civil Rights Act of 1964, 19 Sw.L.J. 329, 331 (1965).

The plaintiffs urge that the lunch counter also affects commerce on the ground that a substantial portion of the food which it serves has moved in commerce. 42 U.S.C. § 2000a(c) (2). In Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) the cost

of food was used to determine this fact. In the case before the court only the gross receipts of the lunch counter have been shown. This evidence does not furnish a basis for finding how much food moved in commerce.

■ An alternative ground brings the golf course within the Act. It is a place of exhibition or entertainment within the meaning of 42 U.S.C. § 2000a(b) (3) and (c). Tournaments and team matches use the defendant's facilities. The operation of such an establishment affects commerce if it customarily presents athletic teams which move in commerce.

Webster, Third New International Dictionary (1964) defines "customarily" as "by custom, in a customary manner."

"Custom" is defined as:

" * * * 1 a: a form or course of action characteristically repeated under like circumstances: a usage or practice that is common to many or to a particular place or class or is habitual with an individual * * * c: repeated practice * * * "

A golf team from Washington, D. C., plays on the course on a regular annual basis. Greater frequency is not required to establish that it is "customarily presented."

Robertson v. Johnston, 249 F.Supp. 618 (E.D.La.1966), upon which the defendant relies, was decided upon facts that differ from those proved here. In *Robertson* night club entertainers lived in the same city as the night club. Occasionally they played in other states. The court declined to hold that the night club was covered by the Act. In the case at bar the evidence discloses that Virginia residents who play on the defendant's course also travel out of state to play on other golf courses. This situation, which bears some resemblance to *Robertson,* is not the basis upon which the court finds that the defendant's golf course is covered by the Act. The Act applies because an out-of-state team plays on the defendant's course on a regularly scheduled annual basis.

The Act prohibits discrimination among spectators who patronize a place of exhibition or entertainment described in 28 U.S.C. § 2000a(b) (3). E. g., Twitty v. Vogue Theatre Corp., 242 F.Supp. 281 (M.D.Fla.1965) (motion picture theatre). However, its application is not limited to spectators if the place of exhibition or entertainment provides facilities for the public to participate in the entertainment. Title 42 U.S.C. § 2000a(a) provides that all persons are entitled to the full and equal enjoyment of the facilities, privileges, advantages and accommodations of a covered established. The plaintiffs are not limited to watching golf matches. They can play golf on the defendant's course on the same basis as white customers of the defendant.

The Laurel Golf Association, which is an independent social organization limited to seventy-five dues paying members, conducts the team matches on the defendant's golf course. Title 42 U.S.C. § 2000a(e) exempts a private club or other establishment not in fact open to the public. The court previously ruled that the Laurel Golf Association was not a necessary party to this proceeding. The plaintiffs do not seek to become members of this association. Insofar as this proceeding is concerned the members of the association are customers of the defendant. The fact that an out-of-state team is scheduled to play on the defendant's course through arrangements made by the association does not exclude the defendant from coverage.

The court is authorized to allow the plaintiffs a reasonable attorney's fee as a part of the costs. 42 U.S.C. § 2000a–3(b). In making this allowance the court has taken into consideration the fact that the question presented is not free from difficulty and that the defendant has not acted arbitrarily. The defendant has expedited the trial by entering into a stipulation that has saved considerable time and expense. In view of this the court will allow the plaintiffs an attorney's fee of $250.00.