# Terry Lee Patterson

v.

# CSX Transportation, Inc.

Record No. 921044

April 16, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Keenan, JJ.

*William S. Sands, Jr. (Howard A. Spier; McChesney, Duncan & Dale; Sams, Spier & Hastings*, on briefs), for appellant.

*John Y. Richardson, Jr. (David N. Anthony; Williams, Kelly & Greer*, on brief), for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

The sole issue in this appeal is whether the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901-950 (1986), provides the exclusive remedy for an injury sustained by a railroad switch operator, who was injured while uncoupling rail cars for descent onto a waiting barge.

Terry Lee Patterson injured his back while working as a switch operator for CSX Transportation, Inc. (CSX) in Decatur, Alabama. Patterson was working out of CSX's Oakworth Yard along the Main Line River Track, which runs parallel to, and 1/4 mile south of, the Tennessee River. Patterson operated the switches that moved the rail cars to and from the Main Line Track and the spur tracks. His

job also included uncoupling rail cars to be sent down the spur tracks.

At the time he was injured, Patterson was switching cars onto the ''boat track'' spur, which descends from the Main Line Track to the shore of the Tennessee River. The injury occurred while Patterson was pulling a ''cut lever'' to uncouple a group of four loaded rail cars onto the boat track. The cars were to proceed onto a waiting barge and be coupled by a member of Patterson's crew positioned on the barge.

As a result of the accident, Patterson allegedly suffered permanent back injuries that prevent him from engaging in his usual occupation. He contends that the accident occurred because the cut lever was defective.

Patterson filed a motion for judgment in the trial court against CSX pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60 (1986). CSX entered a special plea to the court's jurisdiction, alleging that Patterson's sole remedy is under the LHWCA. Relying on *Chesapeake & O. Ry. v. Schwalb*, 493 U.S. 40 (1989), the trial court dismissed Patterson's action. The court ruled that Patterson was covered by the LHWCA because his activities at the time of the injury were an integral part of the barge-loading process.

On appeal, Patterson argues that the trial court erred because his injury did not occur on a covered maritime situs and the task he was performing when injured does not constitute maritime employment. In response, CSX· contends that the trial court's ruling was correct because Patterson met both the ''situs'' and ''status'' tests under the LHWCA. We agree with CSX.

■ The LHWCA provides a two-prong test for coverage. Under the ''status'' prong, the worker must be an ''employee,'' which is defined by the LHWCA as a ''person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker . . .'' 33 U.S.C. § 902(3). This list of occupations that constitute ''maritime employment'' is not all-inclusive. *See Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 423 n.9 (1985). Under the second prong, the ''situs'' test, the disability must have occurred ''from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining

area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).'' 33 U.S.C. § 903(a).

■ In setting forth these definitions in the 1972 Amendments to the LHWCA, Congress sought to eliminate coverage distinctions between longshore work on land and longshore work on navigable waters, so that all such operations would be brought under LHWCA coverage. *Gray*, 470 U.S. at 426-27. Further, depending upon status and situs determinations, other workers, who are not longshoremen, are included. *Id.*

■ In *Chesapeake & O. Ry. v. Schwalb*, the Supreme Court addressed a ''status'' issue involving wholly land-based workers like Patterson. In considering whether certain railroad workers, who repaired and maintained loading equipment used to transfer coal from railway cars to ships on navigable waters, were engaged in ''maritime employment'' pursuant to the LHWCA, the Court stated that the LHWCA covered ''all those on the situs involved in the essential or integral elements of the loading or unloading process.'' 493 U.S. at 46. Finding that this repair and maintenance work was an integral and essential part of the loading process, the Court emphasized that ''[i]t is irrelevant that an employee's contribution to the loading process is not continuous . . . Employees are surely covered when they are injured while performing a task integral to loading a ship.'' *Id.* at 47.

In *Schwalb*, the Court also held that the determination whether an activity constitutes ''maritime employment'' is not altered by the fact that the activity may be described in more than one manner. The Court stated that

> [i]t makes no difference that the particular kind of repair . . . [being performed] might be considered traditional railroad work or might be done by railroad employees wherever railroad cars are unloaded. The determinative consideration is that the ship loading process could not continue . ·. . [absent the work at issue]. *Id.* at 48.

■ We hold that *Schwalb* is determinative of the ''status'' issue presented here. Patterson's activity at the time of his injury constituted the inception of the loading process. As the trial court found, Patterson was injured while attempting to uncouple railway cars in order to move the containers they carried to the boat track. Upon their transfer to the boat track, the cars would move down the track,

without interruption, onto the barge. Since the loading process could not be completed without Patterson's work activity, we hold that his activity was essential and integral to that process.

As the Supreme Court observed in *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 270 (1977), containers, such as those on the cars Patterson was attempting to transfer, are a modern substitute for the hold of a vessel because they are moved directly onto the ship without traditional break-bulk cargo handling. Thus, the use of containers has moved the loading and unloading process shoreward, and certain land-based activities, including the one at issue, have become an essential and integral part of the ship-loading process. *See id.*

■ Patterson argues, nevertheless, that his injury should not be covered under the LHWCA because such an interpretation would result in his moving in and out of LHWCA coverage while performing his duties as a switch operator, depending on the destination of the cars that he switched. Whether this result would occur, however, does not impact our decision here. As the Supreme Court indicated in *Schwalb*, such considerations are "irrelevant" because the determinative consideration is whether the activity that is being performed at the time of the injury is integral or essential to loading a ship. 493 U.S. at 47.

Patterson also argues that his injury is not covered by the LHWCA because it did not occur on a maritime situs as defined by 33 U.S.C. § 903(a). Specifically, he notes that, unlike the plaintiffs in *Schwalb*, he was not injured at a shore-side marine terminal. Patterson contends that because he was injured on a railway track that was not adjacent to navigable waters and was not exclusively devoted to the process of loading and unloading ships, he does not meet the "situs" test. We disagree.

■ Initially, we reject Patterson's contention that the area was not a maritime situs because it also was used for overland transfers. 33 U.S.C. § 903(a) requires only that the area be "customarily used" in loading and unloading vessels. In this context, "customarily" does not mean "exclusively." As stated in *Humphries v. Director, Office of Workers Compensation Programs*, 834 F.2d 372, 373 (4th Cir. 1987), *cert. denied*, 485 U.S. 1028 (1988), "a covered situs need not be used exclusively for maritime purposes or be within any specified distance of navigable waters or a 'maritime' operation."

■ Words in a statute are to be construed according to their ordinary meaning, given the context in which they are used. *Grant*

*v. Commonwealth*, 223 Va. 680, 684, 292 S.E.2d 348, 350 (1982). We hold that, in the context of 33 U.S.C. § 903(a), "customarily" means "regularly." *See* Black's Law Dictionary 385 (6th ed. 1990). Here, Patterson was injured at a location where rail cars regularly are transferred to the boat track for direct loading onto waiting vessels. Since Patterson was injured at a location in regular use as an integral part of the loading process of vessels, and since this location was in close proximity to navigable waters, we conclude that it is an "adjoining area customarily used . . . in loading . . . a vessel." *See* 33 U.S.C. § 903(a); *Newport News Shipbuilding & Dry Dock Co. v. Graham*, 573 F.2d 167, 169 (4th Cir.), *cert. denied*, 439 U.S. 979 (1978).

For these reasons, Patterson met both "status" and "situs" requirements for LHWCA coverage, placing his injury under that exclusive remedy. Accordingly, the trial court did not err in dismissing this action and we will affirm its judgment.

*Affirmed.*