### ATLANTIC MACHINERY & EQUIPMENT, INC., Plaintiff,

v.

### TIGERCAT INDUSTRIES, INC., Defendants.

### No. CIV.A. 3:05CV804–HEH.

United States District Court,
E.D. Virginia,
Richmond Division.

March 6, 2006.

Bradfute Warwick Davenport, Jr., Troutman Sanders LLP, Richmond, VA, for Plaintiff.

Matthew David Green, Michael Robert Ward, Morris & Morris, Richmond, VA, for Defendants.

## MEMORANDUM OPINION

### (Ordering Evidentiary Hearing or Additional Discovery)

HUDSON, District Judge.

This is a declaratory judgment action seeking the Court's interpretation of certain provisions of a heavy equipment dealership agreement. It is presently before the Court on cross Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Both parties have filed memoranda of law in support of their respective positions. After careful review, the Court must conclude that a genuine issue of material fact remains which precludes the Court from resolving significant portions of the pending motions.

## I. BACKGROUND

In 1999, Plaintiff Atlantic Machinery & Equipment, Inc. ("Atlantic"), entered into a written Dealership Agreement ("the Agreement") with Tigercat Industries, Inc. ("Tigercat").[1] Atlantic, a Virginia corpora-

---

1. Two different Dealership Agreements exist, one dated August 27, 1999 and the other dated September 21, 1999. The September 21, 1999 Agreement on record is not executed by Atlantic, however, Atlantic's President,

tion with its principal place of business in Henrico County, is engaged in the business of selling and leasing heavy equipment at retail. Tigercat, a Canadian company headquartered in Paris, Ontario, Canada, manufactures heavy forestry and logging equipment.

Under the Agreement, Tigercat appointed Atlantic as an authorized dealer of certain Tigercat machines and parts for a geographic area of "prime responsibility." The Tigercat equipment covered under the Agreement includes feller bunchers, skidders and loaders which are commonly used for forestry purposes. The equipment is manufactured and assembled in Ontario, Canada, sold to Atlantic and shipped "free on board" Ontario. Tigercat, which almost exclusively uses a dealership network to sell its products to end users, has no direct sales or facilities in Virginia. Instead, under the Agreement, Atlantic sells the equipment and parts to end users and provides services for the equipment.

The Agreement permits either party to terminate the Agreement, with or without cause, upon sixty (60) days written notice. The Agreement also specifies that all communications, including notice of termination, may be delivered by courier, fax or email. In contrast, the Virginia Heavy Equipment Dealer Act ("the Act"), Section 59.1–353, Code of Virginia, 1950, as amended, requires written notice at least 120 days in advance of termination. The Act further dictates that the notice must be sent by certified or registered mail.

On or about July 14, 2005, Atlantic received, via facsimile, a written notice of termination from Tigercat, effective September 13, 2005. The letter of termination does not state the purported reasons for Tigercat's termination of the Agreement.

James F. Spangler, admits signing the Agreement in Atlantic's office.

In response, on September 23, 2005, Atlantic filed a Bill of Complaint in Henrico County Circuit Court, alleging that the termination violates the Act. On November 21, 2005, Tigercat timely removed the case to federal court. Both parties filed motions for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff's Motion for Summary Judgment, filed on December 15, 2005, seeks a declaratory judgment that Defendant's termination of the Agreement was void and prohibited by the Act, thereby entitling Plaintiff to unspecified damages and legal fees. The defendant counters that Atlantic does not meet the minimum jurisdictional requirements under the Act and in the alternative, the Act, as applied, violates the Constitutions of the United States and the Commonwealth of Virginia. In its Motion for Summary Judgment, filed on February 6, 2006, the defendant seeks dismissal of the case on those grounds. For the following reasons, the Court orders either an evidentiary hearing or additional discovery to determine whether Plaintiff meets the minimum jurisdictional requirements under the Act.

## II. DISCUSSION

Before considering Defendant's constitutional claims, the Court must determine whether the Virginia Heavy Equipment Dealer Act applies to the Agreement in question. The Act regulates the relationship between suppliers and dealers of heavy equipment. Under the Act, a dealer is defined as

a person in Virginia (i) engaged in the business of selling or leasing heavy equipment at retail, (ii) who *customarily maintains a total inventory,* valued at over $250,000, of new heavy equipment and attachments and repair parts therefor, and (iii) who provides repair services for the heavy equipment sold.

Va.Code Ann. § 59.1–353 (2001) (emphases added).

The Act only applies if Atlantic is a "dealer" as defined by the statute. At issue is whether Atlantic customarily maintains a total inventory of over $250,000 of new equipment and repair parts. Specifically, the parties disagree on the definitions of "customarily" and "total inventory." Plaintiff argues that a reasonable interpretation of the Act requires that Atlantic's "total inventory," from all equipment suppliers, be evaluated on the annual anniversaries of the Agreement for the previous five (5) years. Defendant argues that the appropriate test is whether the total inventory of Tigercat equipment, exclusive of all other dealers' inventory, currently held by Atlantic in its stock for resale to the public, is over $250,000. Neither side points to specific provisions of the Agreement or the underlying statute to support its suggested construction of the term.

■ In diversity cases such as this, where the question of law turns on the interpretation of a Virginia state statute, this Court must either interpret the law in accordance with the state's highest court or, in the absence of such judicial construction, opine how the Supreme Court of Virginia would construe the provision. *See Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir.1999); *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir.1974). In forecasting the interpretation of the state's highest court, the trial court may consider, among other things: "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Wells*, 186 F.3d at 528 (citing *Liberty Mut. Ins. Co. v. Trian-gle Indus.*, 957 F.2d 1153, 1156 (4th Cir. 1992)). The Court must also employ common sense and guided logic.

## A. Definition of "Total Inventory"

■ Turning first to the definition of "total inventory," a survey of statutory and decisional law is sparse and unilluminating. In the absence of specific guidance from state law, the Court will rely upon time-honored principals of statutory construction. This process is best informed by a consideration of the underlying legislative intent coupled with an examination of the plain meaning of the language at issue.

In adopting the Act, the Virginia General Assembly described its purpose to be the support of a "stable business climate" in order to "encourage and support industry and economic development in the Commonwealth" and to "define the rights and responsibilities of suppliers and dealers of heavy equipment; establish conditions for the continuation of heavy equipment distributorships; foster fair business relations between suppliers and dealers of heavy equipment; [and] prohibit unfair treatment of dealers of heavy equipment." Heavy Equipment Dealer Act, ch. 73, 1988 Va. Acts 80. Taken together, these goals reflect an overarching objective of stimulating economic development by encouraging stability and consistency between suppliers and dealers of heavy equipment in the Commonwealth of Virginia.

Therefore, it would appear that the limitation placed on the term "dealer" is intended to exclude those persons whose participation in the market is inconsequential to the goals stated above.[2] The definition of dealer appears to turn on the size of the dealership in general, as opposed to the volume of the dealer's business with a

---

**2.** The Act defines a person as "a natural person, corporation, partnership, trust, agency or other entity." Va.Code Ann. § 59.1–353 (2001).

particular supplier. The Act appears to be directed toward entities actually in the business of selling heavy equipment, as opposed to companies who conduct a few isolated sales of such equipment annually. In other words, it seems to encompass entities who sell a significant volume of heavy equipment.

■ The Court will next determine whether this interpretation of "total inventory" squares with traditional rules of statutory construction. Initially, the Court finds no ambiguity in the term "total inventory." As courts have consistently recognized, when statutory language is plain and unambiguous, the court's inquiry is at an end and it then simply applies the statute according to its terms. *Stiltner v. Beretta, U.S.A. Corp.*, 74 F.3d 1473, 1482 (4th Cir.1996) (en banc). As a further measure, the Court will also look to the words immediately surrounding the phrase "in issue." *See Gutierrez v. Ada*, 528 U.S. 250, 254–58, 120 S.Ct. 740, 145 L.Ed.2d 747 (2000). Given the plain and unambiguous meaning of the term, and the stated goals of the Virginia General Assembly, the Court holds that in context of the Heavy Equipment Dealer Act, "total inventory" means from all suppliers.

**B. Definition of "Customarily"**

■ Neither the Virginia Supreme Court, nor Virginia's trial courts, have had occasion to interpret the term "customarily" in the context of the Act. However, the Supreme Court of Virginia has defined customarily in the setting of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901–905 (1986). *See Patterson v. CSX Transp., Inc.*, 245 Va. 483, 429 S.E.2d 215 (1993). While not necessarily controlling, the analysis is instructive. The LHWCA requires that an "area be 'customarily used' in loading and unloading vessels" in order to be a maritime situs. *Id.* at 487, 429 S.E.2d 215. The court held that, in the context of LHWCA, "customarily" means "regularly." *Id.* at 488, 429 S.E.2d 215. In drawing this somewhat self-evident conclusion, the court considered the definition provided in Black's Law Dictionary and reiterated that "[w]ords in a statute are to be construed according to their ordinary meaning, given the context in which they are used." *Id.* at 488, 429 S.E.2d 215.

Similarly, at least one other federal court in this district has had occasion to define the term "customarily" in the context of Title II of the Civil Rights Act of 1964 ("CRA"), 42 U.S.C. § 2000a. *See Evans v. Laurel Links, Inc.*, 261 F.Supp. 474 (E.D.Va.1966). Under the CRA, an establishment affects commerce if, among other things, "it customarily presents ... athletic teams ... which move in commerce." 42 U.S.C. § 2000a(c). In holding that the defendant, a golf course, was a place of exhibition or entertainment under the CRA, the court referred to Webster's Third New International Dictionary (1964), in defining customarily as "by custom, in a customary manner." *Evans*, 261 F.Supp. at 477. The court in *Evans* concluded that the term "customary" meant "a form or course of action characteristically repeated under like circumstances ... repeated practice." *Id.* In its final analysis, the court held that because a golf team from Washington, D.C. played on the defendant's golf course on a regular annual basis, the "customarily presented" element of the statute was met. *Id.*

In the absence of state jurisprudence dictating the interpretation of the language of a statute, courts should construe the word according to its ordinary meaning, given the context of the statute. "Customarily" has been defined as "usually, habitually ... general practice or usual order of things, regularly." Black's Law

Dictionary 462 (4th ed.1968). Customarily signifies a frequency which is more than occasionally but may be less than constant. Likely, the General Assembly intended to include individuals who regularly had $250,000 worth of product in their possession on a recurring basis. This Court holds that, in the context of the Heavy Equipment Dealer Act, "customarily maintains a total inventory" requires that the dealer have $250,000 of inventory on hand or in stock on a regular basis.

The definition of "customarily" is flexible and the outcome of the analysis under the Act will be factually dependent. In order to evaluate whether Atlantic customarily has the required inventory on hand, Atlantic's total inventory should be assessed on a monthly or quarterly basis. Similarly, the Court is of the opinion that "customarily" may be determined by evaluating the total inventory during the years immediately preceding the date the Agreement was terminated. The evidence currently before the Court is insufficient to demonstrate whether Atlantic meets the requirements of the Act. Obviously, a determination of the applicability of the Act is a prerequisite to reaching the merits of Defendant's constitutional challenge. This factual issue may be resolved by either an evidentiary hearing or additional discovery. Counsel for the parties shall notify the Court pursuant to the instructions in the accompanying Order.

### ORDER

#### (Ordering Evidentiary Hearing or Additional Discovery)

THIS MATTER is before the Court on the parties' cross Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Both parties filed memoranda of law in support of their respective positions. The Court finds that a genuine issue of material fact remains and ORDERS either additional discovery or an evidentiary hearing. Accordingly, counsel for the parties are DIRECTED to notify the Court as to which of these alternatives they wish to exercise within ten (10) days of the filing of this Order and accompanying Memorandum Opinion.

The Clerk is directed to send a copy of this Order to all counsel of record.