UNITED STATES of America, by Nicholas DeB. KATZENBACH, Attorney General of the United States,

v.

JACK SABIN'S PRIVATE CLUB, a non-profit corporation, Jack Sabin, Suzanne S. Sample, and Betty Sabin, Individually, and as Officers and Trustees of Jack Sabin's Private Club.

Civ. A. No. 3344.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
March 10, 1967.

Nicholas DeB. Katzenbach, Atty. Gen., John Doar, Asst. Atty. Gen., Louis C. LaCour, U. S. Atty., Eastern Dist. of Louisiana, New Orleans, La., D. Robert Owen, Atty., Dept. of Justice, John H. Bingler, Jr., Atty., Dept. of Justice, Washington, D. C., for plaintiff.

Wade H. Heaton, Roy F. Cangelosi, Jr., Kizer, Heaton, Craig & Cangelosi, Baton Rouge, La., for defendants.

WEST, District Judge.

The restaurant and lounge known as Jack Sabin's Private Club, located in Baton Rouge, Louisiana, is an eating establishment which offers its facilities to members of the white race only. Its owner justifies this practice by his assertion that he operates a "private club," not open to the public. The plaintiff, the United States Attorney General, brings this suit pursuant to authority granted by Section 206 of the Civil Rights Act, of 1964, 42 U.S.C.A. § 2000a–5, seeking injunctive relief on the grounds that this establishment is not, in fact, a private club not open to the public, but is, instead, a place of public accommodation as defined in Section 201 of the Act, and that by offering its facilities to white people only, defendants have engaged in a pattern or practice of depriving members of the Negro race of the full and equal enjoyment of the rights secured by Title II of the Civil Rights Act of 1964.

The facts as hereinafter set forth and used as the basis for this decision have been stipulated to by counsel for all parties. Based upon these facts, it is the opinion of this Court that the plaintiff is entitled to injunctive relief.

### FINDINGS OF FACT

1. Defendant, Jack Sabin, for many years owned and operated an eating establishment known as Jack Sabin's Restaurant and Lounge. At all times pertinent hereto, this establishment has been located near the intersection of U. S. Highway 61 and Louisiana Highway 426 in East Baton Rouge Parish, Louisiana.

2. During the many years of its operation, Jack Sabin's Restaurant and Lounge was never open to members of the Negro race, but instead, was available only to members of the white race. It was operated by Jack Sabin as an ordinary restaurant and lounge, open to the public generally. There were no requirements to be met by those who patronized the place except that they be non-Negroes and able to pay their bill.

3. On July 2, 1964, the same day that the Civil Rights Act of 1964 was signed into law, a non-profit corporation designated as Jack Sabin's Private Club was incorporated under the laws of the State

of Louisiana. This corporation was formed by Jack Sabin, his wife Betty Sabin, and their daughter Suzanne S. Sample, as incorporators. The officers of the corporation were and still are Jack Sabin, President, Suzanne S. Sample, Vice President, and Betty Sabin, Secretary-Treasurer. The Board of Trustees consisted of and still consists of Jack Sabin, Suzanne S. Sample, and Betty Sabin.

4. Since its incorporation on July 2, 1964, and at the present time, Jack Sabin's Private Club has been and is now a facility principally engaged in selling food and beverages for consumption on the premises.

5. A substantial portion of the food and beverages which Jack Sabin's Private Club serves, and which is consumed on the premises, has moved in interstate commerce, that is, from sources outside of the State of Louisiana, to the premises of Jack Sabin's Private Club in the State of Louisiana.

6. When Jack Sabin's Private Club was incorporated on July 2, 1964, it was provided, inter alia, in the Articles of Incorporation that the membership of the Club would consist of such individual members as may be approved by the Board of Trustees, and that the issuance of certificates of membership would be conditioned upon the payment of a membership fee as may be fixed by the Board of Trustees. The Articles of Incorporation further provide that the Board of Trustees may make and alter by-laws, and that the by-laws so adopted may be changed or repealed by a two-thirds vote of members present at a general or special meeting. A quorum for the conduct of business at such a meeting is declared to be twenty per cent of the members qualified to vote. (The "Club" has a present "membership" of about 12,000 "members." Thus 2,400 persons must be present in person or by proxy to constitute a quorum such as could alter or repeal a by-law adopted by the Board of Trustees.)

7. The By-Laws adopted by the Board of Trustees authorizes Jack Sabin, without any prior approval of the Board of Trustees or of the membership, to mail out membership cards and provides that members must always present cards upon entering the Club or be identified as being on the Club membership list.

8. On the same date that the "Club" was incorporated, the Board of Trustees (Jack Sabin, his wife, and daughter) adopted a resolution authorizing the Club to enter into a management contract with Jack Sabin personally. This "Management and Furnishing of Facilities Contract" was executed on behalf of the Club by Betty Sabin, Secretary-Treasurer, and by Jack Sabin individually. This agreement provided that Jack Sabin would furnish to the "Club" the furniture, fixtures, buildings, and stock of merchandise located on the Airline Highway at the Old Hammond Highway in Baton Rouge (the same property used by Jack Sabin's Restaurant and Lounge), and would furnish and pay all employees to operate the Club. In return for doing this, Jack Sabin receives "all profits derived from the operation of Jack Sabin's Private Club." This agreement was for an initial term of ten years and is automatically renewed each ten years unless terminated by agreement between the parties. Jack Sabin personally establishes prices to be charged for food and beverages, wages to be paid employees, etc., thus having control over the "profits derived from the operation of Jack Sabin's Private Club."

9. Although the Articles of Incorporation provide that annual meetings of the membership shall be held at a place and time designated in the By-Laws, the By-Laws make no mention of either time or place for holding annual meetings of the membership, and as a matter of fact, no annual or special meetings of the membership have ever been called or held.

10. For all intents and purposes there have been no substantial changes in the operation of Jack Sabin's Restaurant and Lounge since it became known as Jack Sabin's Private Club. The monthly expenditure for food, beverages, and other

products has remained substantially the same; the hours of operation are substantially the same; the number of persons employed by Jack Sabin has been substantially the same; and the amount and nature of advertising has been substantially the same. The advertising by billboard and newspaper clearly invites the public to dine at this establishment. It extolls the virtues of the foods served and the services offered. The only difference between the advertising done prior to July 2, 1964, and that done since July 2, 1964, is that the place was previously called "Jack Sabin's Restaurant and Lounge," whereas now, and since July 2, 1964, it has been called "Jack Sabin's Private Club." All of the advertising still clearly invites the public —not just "members"—to come and dine.

11. When this so-called "Club" was incorporated, charter membership cards were mailed by Jack Sabin to some 4,000 or 5,000 regular customers of Jack Sabin's Restaurant and Lounge. No membership fee was required. To date, approximately 12,000 membership cards have been issued. Most of these have been issued voluntarily by Jack Sabin without the prospective member having applied for membership. When members of the white race have requested membership cards they have been freely issued by Jack Sabin without the necessity of the prospective member being approved by anyone other than Jack Sabin himself. No membership fees have been charged and no membership cards have been issued to other than members of the white race. There is no restriction on the number of members admitted to the Club.

12. An alphabetical list of duplicate membership cards issued is kept by Jack Sabin.

13. On numerous occasions white persons have presented themselves at Jack Sabin's Private Club without having applied for membership in the Club and have been admitted and served without being required to apply for membership or to acquire a membership card. On other occasions, white persons have been allowed to dine at this establishment and while there, after having been served, have requested membership cards and have been immediately issued membership cards without delay and without any approval of anyone but Jack Sabin himself. Except as hereinafter noted, there is no evidence of any white person ever having been refused service at Jack Sabin's Private Club regardless of whether or not he possessed a membership card, or regardless of whether or not his name was on a membership list.

14. There are no members of the Negro race who have ever been approved for membership in the Club. Whenever a Negro has attempted to dine at this restaurant, he has been refused admission because he was not a member. Except as hereinafter noted, the same has never been true as to white persons wishing to dine there.

15. On one particular occasion, five or six white professors or instructors from the Government Department of Louisiana State University went to Jack Sabin's Private Club to eat. They had no membership cards and had not been invited by any members of the so-called Club, but despite this had no difficulty whatsoever getting in or being served. When they inquired as to the meaning of the "Private Club," after they were seated and their order taken, they were told "Oh, it doesn't matter, you know what that's all about," and were promptly given a membership application, which they did not fill out. They ate, paid their bill, and left. A few days later, one or two of these same white persons returned to the Club accompanied by a member of the Negro race. They were all denied admission because they had no membership cards. But while they were being questioned, a group of white persons were admitted without producing or showing membership cards or in any way identifying themselves as members or guests of members.

16. While there is evidence that several Negroes have applied for membership in the Club, it was agreed between the parties that no members of the Negro

**94**

race have ever been granted membership, nor have they ever been permitted to use the facilities of Jack Sabin's Private Club.

17. No member has ever been charged either a membership fee or dues of any kind.

18. Prices charged for food and services are comparable to other public restaurants of the same quality as Jack Sabin's. Unless a "member" has established his credit and has been issued a credit card, he must pay cash for food and services at Jack Sabin's. Bills may be charged only by those possessing a current credit card.

19. Under the Management and Furnishing of Facilities Contract, the profits to which Jack Sabin has been entitled are: from July 1, 1964 to December 31, 1964, $8,345.30; from January 1, 1965 through December 31, 1965, $42,373.67; and from January 1, 1966 through March 31, 1966, $13,443.55.

20. All profits from the operation of Jack Sabin's Private Club inure to the sole benefit of Jack Sabin, just as did the profits from the operation of Jack Sabin's Restaurant and Lounge. There is no evidence that there is any substantial difference in the profits since July 2, 1964, from what they were prior to that time.

21. There are, as a matter of fact, no real requirements whatsoever that one must meet in order to enjoy the privileges of dining at this restaurant except that he be a non-Negro, and able to pay his bill. Members of the white race are admitted and served whether they have applied for membership in the Club or not. Members of the white race may, if they so request, be issued a membership card without meeting any standards or requirements and without being passed upon for membership by any committee or by the Board of Trustees. Negroes, as a matter of fact, cannot under any circumstances use the facilities of this restaurant, nor be issued membership cards.

■ 22. The Court finds, as a fact, that the establishment known as Jack Sabin's Private Club is not, in fact, a private club which is not open to the public. This so-called Private Club actually has no members whatsoever. It is, instead, a restaurant, located on a major U. S. Highway connecting Baton Rouge, Louisiana, with New Orleans, Louisiana, a substantial portion of whose food and beverages have moved in interstate commerce, and whose facilities are offered by its owner and operator, Jack Sabin, for use by the general public so long as they are members of the white race.

23. It was agreed between the Court and all counsel that this decision would pertain to the merits and that if injunctive relief were granted it would be in the nature of a permanent injunction.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action under the provisions of Section 206(a), Section 207(a), of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000a-5, 2000a-6, and under the provisions of Title 28 U.S.C.A. § 1345.

2. Under the facts as stipulated to by counsel for all parties to this suit, and as found by the Court, the Court finds as a matter of law that Jack Sabin's Private Club is not, in fact, a private club, but is instead a place of public accommodation as contemplated by Section 201 of the Civil Rights Act of 1964. 42 U.S.C.A. § 2000a.

■ 3. As long as the establishment known as Jack Sabin's Private Club remains open to the public, its owners and operators must accord to all persons, without discrimination or segregation on the grounds of race, color, religion, or national origin, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations which it, as a place of public accommodation, offers to the public. Section 201(a), Civil Rights Act of 1964, 42 U.S.C.A. § 2000a(a).

■ 4. In operating Jack Sabin's Private Club to the exclusion of members of the Negro race, when said establishment is not in law or in fact a private

club not open to the public, defendants' actions have resulted in a pattern or practice of depriving members of the Negro race the full enjoyment of rights secure by Title II of the Civil Rights Act of 1964.

 5. Defendants have the express right, if they wish to exercise it, to form a private club, and if such a club were formed and actually operated by them as a private club not in fact open to the public, it would, under the provisions of Section 201(b) (e) of the Civil Rights Act of 1964, be exempt from the public accommodation provisions contained in Title II of that Act.

6. While in no way restricting defendants' right to form and operate a private club not in fact open to the public as contemplated by Section 201(e) of the Act, plaintiff is nevertheless entitled, as a matter of law, to an injunction at this time, enjoining the defendants from operating the establishment known as Jack Sabin's Private Club as a place of public accommodation in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000a—2000a–6, and particularly from denying anyone, regardless of his race, color, religion, or national origin, the full exercise of the rights secured by Title II of that Act.

A decree will be entered accordingly.