Jimmie WESLEY, Raymond Hill, Robert Scott, Raymond Alexander, Raymond Polote, George Jackson, individually and on behalf of others similarly situated, Plaintiffs,

v.

The CITY OF SAVANNAH, GEORGIA, and J. Curtis Lewis, as Mayor; and also as Chairman of the Bacon Park Commission and the Bacon Park Commission, the Savannah Golfers' Association and Ronald L. Coleman as President, Tommy Ryles, as Director and Golf Professional of Bacon Park, a city owned facility, S. T. McTeer, as tournament coordinator, Golfers' Association Championship, Defendants.

Civ. A. No. 2377.

United States District Court
S. D. Georgia,
Savannah Division.

Jan. 9, 1969.

Bobby Hill, Savannah, Ga., Jack Greenberg, New York City, for plaintiffs.

Hugh P. Futrell, Jr., Thomas J. Mahoney, Jr., Jack H. Usher, Savannah, Ga., for defendants.

## ORDER OF COURT

LAWRENCE, District Judge.

Does an amateur golf tournament played for the city championship on a municipally-owned course transgress the Fourteenth Amendment and the Civil Rights Act of 1964 where the sponsor, a private golf association, limits entries in the event to its own membership and restricts same to the white race?

Two days before the start of the fifty-four hole annual tournament held over Labor Day weekend in 1968 this action was brought by several Negroes to enjoin Savannah Golf Association, the City of Savannah, Bacon Park Commission, the Lessee of the course and others from holding a Championship tournament on the city-owned links and excluding plaintiffs and the class they represent from participation.

The prayer for a restraining order was denied. Subsequently, the matter came on for hearing upon the injunctive and declaratory features of the action and evidence was presented by both sides. None of the parties ordered a transcript. However, the testimony produced no meaningful factual dispute. My notes and my recollection of the case are sufficient for me to pass on the issue.

The Bacon Park golf course was built by the City of Savannah in the 1920's. By an Act of the General Assembly the management of this public park and municipal golf course is delegated to a Board known as the Bacon Park Commission. The Mayor is ex-officio Chairman. The Chairman of the County Commissioners is also an ex-officio member. The other members of the Commission consist of two citizens of Savannah, two Aldermen and one County Commissioner. Georgia Laws, 1925, pp. 1441 ff.

Since 1955 the municipal course has been leased to a private operator for a flat annual rental and a percentage of greens fees in excess of a certain dollar volume. Revenues go into the City Treasury. The lease between the Commission and Lessee provides that the latter shall "make and enforce rules and regulations for the daily orderly and proper operation of the golf course subject to the approval of Lessor." The Lessee, Thomas M. Ryle, is one of the defendants.[1]

Until about 1961 the course was open to members of the Negro race only one day a week. The facility was desegregated by the Bacon Park Commission in the light of the many decisions holding discrimination in the use of recreational facilities to be violative of the Fourteenth Amendment. See Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776; City of Greensboro v. Simkins, 4 Cir., 246 F.2d 425; Holley v. City of Portsmouth, D.C., 150 F.Supp. 6; Beal v. Holcombe, 5 Cir., 193 F.2d 384; Sawyer v. City of Mobile, Ala., D.C., 208 F.Supp. 548; City of Fort Lauderdale v. Moorhead, 5 Cir., 248 F.2d 544; Hampton v. City of Jacksonville, Fla., 5 Cir., 304 F.2d 320.

The course is now completely integrated except that plaintiffs complain of being unlawfully and discriminatively excluded from tournaments sponsored by Savannah Golf Association. Prior to the 1968 City Championship five or six Negro golfers attempted to qualify therefor. They tendered the $17.00 necessary to enter which amount represented dues for annual membership in the Savannah Golf Association of $5.00 and $12.00 as the entrance fee for the event. My notes of the testimony show that the operator of the municipal course, Mr. Ryle, informed them (or some of them), "I'm sorry, you have to be a member." The present action ensued.

---

1. At the present time this lease is on a month-to-month basis because of the effect of the proposed Casey Canal Expressway.

The Savannah Golf Association was formed about 1950 for the purpose of stimulating interest in golf in the community and promoting youth participation in the sport. The Constitution of the organization (at least the December 8, 1967 version) states that its purpose was to "further interest in golf". "All male persons 18 years old or older residing or working in Chatham County, Georgia, or who is a resident member of a Chatham County golf club shall be eligible for active membership in this Association on approval of the membership committee."

For a number of years the defendant Association has sponsored the men's city amateur championship tournament. In putting on the event at Bacon Park in 1968 it purchased bulk starting times by advance payment of greens fees. The tournament does not wholly preempt the course during the weekend in question. It was open to non-participating golfers for four hours on each of the three days of the competition. Purchase of starting times by private groups is not unusual. The Mid Town Golfers Association, which is entirely Negro, holds its own tournaments at the Bacon Park course. Starting times are sold in advance to such organizations or groups as Savannah Electric & Power Company, Knights of Columbus, American Cyanamid, the Traffic Club, Jewish Educational Alliance and others for the use on occasion of members or employees.

Of course, none of these playing groups compares in size with the field competing in the Savannah Golf Association's city amateur tournament. The championship event sponsored by this organization possesses considerable prestige and the winner is generally regarded as the amateur golf champion of the city. I perused the Savannah newspapers for ten years back. During those years the name of the tournament has undergone changes. In 1959–1962 the newspapers called it the "Annual City Golf Tournament". The entry fee was $7.50 for members of the Association and $10.00 for non-members. In 1963 it was described as "The City Invitational Golf Tournament". The following year it was the "Annual City Amateur Tournament". In 1965 the local press stated that "Savannah golfers have until Thursday at 6 p. m. to register for the City Championship tournament". The next year the event was described as the "Annual Savannah Golf Association City Championship tournament". It was pointed out that the tournament was open only to members thereof. Again, in 1967, there was a similar limitation of eligibility to compete in the "City Golf meet."

The Association which has about 450 members restricts its membership to those of the white race. Any white person who wishes to play in the Labor Day tournament is automatically admitted to membership and becomes eligible to compete on paying the required dues and entrance fee. The testimony in the case was to the effect that after the Board displayed an inclination to permit Negro participation in the 1968 tournament a meeting of the membership was held and the Constitution amended so that new members could be elected only by a two-thirds vote of the membership.

Plaintiffs assert that the tournament as conducted violates the rights guaranteed to them by Title II of the Civil Rights Act of 1964 prohibiting discrimination in places of public accommodation. They contend that the course and therefore the tournament is a public accommodation under 42 § 2000a and assert that the discrimination practiced is supported by State action.

It is relevant at this point to see what the federal courts have said in regard to the exception in the Civil Rights Act in the case of "private establishments". The public accommodations provisions of the Act are not applicable "to a private club or other establishment not in fact open to the public". In Nesmith v. Young Men's Christian Association, 4 Cir., 397 F.2d 96 the

Court of Appeals for the Fourth Circuit stated:

"In determining whether an establishment is in fact a private club, there is no single test. A number of variables must be examined in the light of the Act's clear purpose of protecting only 'the genuine privacy of private clubs * * * whose membership is genuinely selective * * *' 110 Cong.Rec. 13697 (1964) (remarks of Senator Humphrey). The first factor is the size of the organization and the open-ended character of its membership rolls. Most private clubs have limited membership, Bradshaw v. Whigman, 11 Race Rel.L.Rep. 934 (S.D.Fla.1966), and easily articulated general admission standards."[2]

A decision which has factual relevance here is Re: Application of the New York Athletic Club of the City of New York, to quash a purported subpoena duces tecum issued by the City Commission on Human Rights, 56 Misc.2d 565, 289 N.Y.S.2d 246. It was there conceded that Petitioner is a private club but was contended that its discriminatory practices had brought the organization into the area of public interest by reason of demonstrations during a major sporting event sponsored by it at Madison Square Garden. The New York Administrative Code excepts from places of public accommodation any club which is in its nature "distinctly private". It engrafts an exception upon this exception. Whenever a private club or organization sponsors an amateur athletic contest and bills same as a "New York state championship contest or uses the words 'New York State'" in its announcements, the exhibition is no longer deemed to be private. Here an annual golf tournament is sponsored by a private association, played on a public links and announced as the Savannah City Championship. Does this fact—the major quality of the event, the prestige attached to wearing the symbolic crown of amateur golf champion of the city—render segregation of the affair obnoxious to the Fourteenth Amendment?

▉ As far as the defendant City, the Bacon Park Commission and the Lessee are concerned there has been no active, intentional discrimination. Any and all groups of persons, white, black, or mixed, are equally privileged to use the course for competitive events.[3] Freedom of association with whom one pleases is a basic right of American citizens and is protected by the First Amendment. A private association restricted in its membership on a racial or other basis is one expression of the freedom of association of all Americans. However, plaintiffs do not contend, as I understand it, that they are constitutionally entitled to be members of the Savannah Golf Association.[4] While some of them applied for membership, the basic contention seems to be that the membership requirement of the defendant Association cannot be used as the means of excluding Negroes as a class from playing in a city championship tournament on a public links.

It is conceded by the Savannah Golf Association that the Bacon Park course is a place of public accommodation under the Civil Rights Act of 1964. Its counsel contends, however, that it is merely a customer of the Bacon Park management.[5] This is broadly true. The trou-

---

2. See also United States by Katzenbach v. Clarksdale King & Anderson Company, D.C., 288 F.Supp. 792; United States by Katzenbach v. Jack Sabin's Private Club, D.C., 265 F.Supp. 90; Williams v. Rescue Fire Company, Inc., D.C., 254 F.Supp. 556.

3. If plaintiffs' contentions are carried to their ultimate reach, no entirely white or entirely black foursome should play the municipal course. In fact, counsel for plaintiffs claimed discrimination by the Lessee in not integrating play among players who come to the municipal course looking for a game.

4. Membership in a club engaged in sponsoring and supervising automobile races is not a "civil right". STP Corporation v. United States Automobile Club, Inc., D.C., 286 F.Supp. 146.

5. Cf. Evans v. Laurel Links, Inc., D.C., 261 F.Supp. 474.

ble is that as a customer of the Lessee the Association brings about what amounts to a three-day use of the golf course for a major tournament from which colored golfers are deliberately excluded.

The Bacon Park Commission and the City of Savannah seem to take the position that possession and control of the course is in a thirdparty under a bona fide lease; that the lessee operates the facility on an integrated basis, and that a segregated golf tournament thereon is neither their doing nor concern.

■ State action may take the form of allowing private organizations to use public facilities. It was held in Statom v. Board of Commissioners of Prince George's County (1963), 233 Md. 57, 195 A.2d 41 that use by a private boys' club, which was segregated, of publicly owned playgrounds without charge and the providing by state agencies of free office space to its executive director in a county building amounts to significant involvement by the State and is therefore within the ambit of the Equal Protection Clause.[6]  In the present case there is no muncipal subsidization of the use by segregated private organizations of a public facility.  However, state involvement here, sufficient to evoke the Equal Protection Clause, is discoverable in the many cases involving property leased by a state or its governmental sub-divisions where discriminatory practices by the lessee continue to exist.

■ Where a portion of state-owned property is leased for restaurant purposes, and service is refused to Negroes, the Supreme Court said in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45, "The State has so far insinuated itself into a position of interdependence with Eagle [the restaurant] that it must be recognized as a joint participant in the challenged activity, which, in that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment." The sale of a golf course to a private person who continues to operate the facility on its former segregated basis does not remove the operation from the realm of state action or control under the Fourteenth Amendment.  Hampton v. City of Jacksonville, 5 Cir., 304 F.2d 320.  See also Wimbish v. Pinellas County, Fla., 5 Cir., 342 F.2d 804.

In the case of Bacon Park state control and significant involvement may be found in the undelegable duty imposed by statute upon the Commission to "manage, direct and care for that certain public park and municipal golf course * * * known as Bacon Park".  The lease provides that Lessee shall maintain and operate the golf course and that the property "shall be used for golf purposes only".  In Hampton, supra, the deed from the City of Jacksonville required the grantee continually to maintain the property as a golf course.  In this respect the Circuit Court of Appeals said, "This is complete present control even though the daily operation is of course, not subject in other matters to the City's direction."  For purposes of the Fourteenth Amendment, State action exists here.

■ The Civil Rights Act of 1964 is to "be liberally construed and broadly read".  Miller v. Amusement Enterprises, Inc., 5 Cir., 394 F.2d 342.  So read, it forbids the continued existence of this vestigial trace of the City's former segregated operation of Bacon Park.  The denial of a Negro's right to enter the city amateur tournament is a product and left-over of a state-imposed system of segregated use of public recreational facilities.

■ This is not an easy case to decide any way one looks at it.  But there are aspects of it which are stubbornly persistent and which simply will not go

6. The Court pointed out that "A mere casual or occasional use of, or permission to use, public facilities by a private organization does not 'involve' the State in the conduct and affairs of the organization to such 'significant extent' as to require the private organization to operate on a nonsegregated basis."

away. The Bacon Park course is owned by the City of Savannah. Responsibility for its operation is conferred upon a public board. Under the legislative Act creating the Bacon Park Commission rules and regulations made by it pertaining to the golf course, if approved by the Mayor and Aldermen, possess the force and effect of city ordinances. The Savannah Golf Association owns no golf course facilities of its own. It uses the municipally-owned links to stage the Labor Day tournament and heralds the event as the City Amateur Championship. The winner is regarded as the champion, not of the Association, but of the metropolitan Savannah area. Eligibility to compete in it is confined to white golfers by a membership device. The Constitution of the Association says that one of its purposes is to "provide a common meeting ground for golfers who live in the area of membership". It chooses to treat this as meaning only white golfers. This is entirely permissible but it becomes entirely impermissible when the locale of the Association's city championship tournament is the city's public golf course.

In arriving at this conclusion I do not imply that the Savannah Golf Association cannot stage an all white tournament for an all white membership at Bacon Park and this equally applies to the Mid Town Golfers' Association.[7] What I am saying is that under latter-day Fourteenth Amendment exegesis the staging of this particular tournament on a segregative basis upon a municipally-owned golf course falls short of Equal Protection.

I have decided to deal only with the declaratory judgment phase of the complaint at this stage. At this time I am not going to grant any injunctive relief. It is not necessary to do so. I have declared and hope have made plain what the respective rights of the parties are as I am given to see them. The matter of equitable relief is reserved for future determination as and if the need arises.

Three of the defendants are unnecessary parties to this action. They are J. Curtis Lewis in his official capacity as Mayor and as ex-officio Chairman of the Bacon Park Commission; Ronald L. Coleman as President of the Savannah Golf Association and S. T. McTeer, the 1968 tournament co-ordinator. The motions to dismiss are granted as to each of these defendants. The other defendants I regard as necessary parties because of the declaratory nature of the action. The motion to dismiss and for judgment on the pleadings are overruled as to them. Keeping some of the parties in court is not a finding of any invidious or discriminative acts on their part. The Lessee, Mr. Ryle, for example, has, in my opinion, operated the facility on an entirely fair and impartial basis as between the races.

*My final comment is strictly obiter.* The tournament is too prestigious, too traditional and provides too much challenge, pleasure and reward to the participants to permit it to fall by the way as a result of this litigation. I express the hope that there will continue to be a Labor Day tournament at Bacon Park but one that will be a truly open competition for the city amateur championship.

---

7. Use of the Bacon Park course by private groups for such purposes should conform to regulations of the management in respect to size and time. I should add that the order I am rendering in this case will in no way interfere with present practices in regard to organizations and businesses whose members or employees play in groups and buy time in bulk.