**UNITED STATES JAYCEES, Appellant,**

v.

**Mary BLOOMFIELD, et al., Appellees.**

**No. 79–1141.**

District of Columbia Court of Appeals.

Argued Sept. 26, 1980.

Decided Aug. 31, 1981.

---

Carl D. Hall, Jr., Tulsa, Okl., with whom Robert J. Corber, Cheryl A. Skigin, and Robert M. Rader, Washington, D. C., were on the brief, for appellant.

Danielle deBenedictis Nutter, with whom Scott R. Schoenfeld, Washington, D. C., was on the brief, for appellees.

Before KELLY, KERN and HARRIS, Associate Judges.

KERN, Associate Judge:

This is another litigative skirmish in the continuing legal battle that has been waged before various courts and administrative agencies in other jurisdictions over the law-fulness of the proviso in the bylaws of the United States Jaycees (Jaycees) that only males between the ages of 18 and 35 may be members.[1] *See New York City Jaycees, Inc. v. United States Jaycees, Inc.*, 512 F.2d 856 (2d Cir. 1975); *Junior Chamber of Commerce v. Missouri State Junior Chamber of Commerce*, 508 F.2d 1031 (8th Cir. 1975); *Junior Chamber of Commerce of Rochester v. United States Jaycees*, 495 F.2d 883 (10th Cir.), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974); *United States Jaycees v. McClure, Minn.*, 305 N.W.2d 764 (1981); *Fletcher v. United States Jaycees*, Nos. 78–BPA–0058–0081, *Massachusetts Commission Against Discrimination*, decided Jan. 27, 1981.

Appellees filed an action in the trial court against Jaycees and one of its State Chapters, the District of Columbia Jaycees. The complaint alleged that this particular bylaw constitutes discrimination on the basis of sex and therefore violates the District of Columbia Human Rights Act of 1977, D.C. Code 1978 Supp., § 6–2201 *et seq.* (the Act).[2] Appellees further alleged that Jaycees, by accepting their dues and admitting them to membership, although they are females, thereby contracted to accord them continuing rights of membership.[3] Therefore, when Jaycees moved to terminate the status of appellees as members upon the conclusion of a Pilot Project under which women were admitted as members of selected state chapters on an experimental basis, Jaycees violated its contractual obligation to appellees.

Appellees moved for a preliminary injunction. The trial court, after taking testimony and hearing argument, enjoined the Jaycees and the District of Columbia Jaycees from "directly discriminating . . . in

---

1. Any other person and any business concern or association may be an associate member. Associate members cannot vote or hold office but otherwise participate fully in the Jaycees' many activities of community service.

2. District of Columbia Jaycees filed an answer to appellees' complaint, noting that while "it supports the principle of women membership," it "has not sought a judicial remedy but instead has chosen to attempt to effect a change in the United States Jaycees' bylaws through the convention process." District of Columbia Jaycees did not appeal the trial court's order.

3. The term of membership in Jaycees is for one year. Jaycees retains $4 out of the total annual dues which both members and associate members pay to the local association of the State Chapter to which they belong.

their membership policy on the basis of sex" within the District of Columbia and "from taking any action to remove the charter of the local association, the Downtown Jaycees, because it had taken appellees as members." [4]

■ The grant by the trial court of the extraordinary remedy of a preliminary injunction while an action is pending decision is appropriate only when, among others, there is a substantial likelihood that the moving party will prevail on the merits of the suit. *Wieck v. Sterenbuch*, D.C.App., 350 A.2d 384 (1976). We review the trial court's grant of a preliminary injunction only to gauge the likelihood of success, not determine the suit on its merits. *Id.* at 387; *A Quaker Action Group v. Hickel*, 137 U.S. App.D.C. 176, 180, 421 F.2d 1111, 1115 (1969). *See University of Texas v. Camenisch,* —— U.S. ——, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981).

■ In the instant case, the trial court's entry of an injunction rested upon its interpretation of the Act and, particularly, its conclusion that the membership bylaws of Jaycees constituted sex discrimination in a "place of public accommodation" and an "educational institution." The Act declares it to be "an unlawful discriminatory practice . . . to deny on [the basis of sex] any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any *place of public accommodation*". D.C.Code 1978 Supp., § 6–2241(a)(1) (emphasis added). The Act proceeds to define a "place of public accommodation" as "all places included in the meaning of such terms as . . . hotels . . . restaurants . . . barrooms . . . ice cream parlors . . . wholesale and retail stores . . . banks . . . insurance companies . . . hospitals . . . swimming pools . . . barber shops . . . theaters . . . recreation parks

. . . public halls. . . ." D.C.Code 1978 Supp., § 6–2202(x).[5]

The record is clear that appellant is not a place of public accommodation as defined by Section 6–2202(x). It is undisputed that appellant is a voluntary membership organization whose primary function is to render community service and instill a sense of service to the community in the members and associate members. Appellant does not operate from any particular place within the District of Columbia but, through its local chapters, conducts activities such as the Cherry Blossom Festival and Parade, the Soap Box Derby, the Children's Shopping Tour and the Fleming Public Service Awards Ceremony.

Therefore, assuming arguendo for the purpose of determining this appeal that Jaycees' bylaws limiting membership to males under 35 constituted discrimination based on sex, appellant nevertheless is beyond the reach of the Act since it is not a place of public accommodation as defined by the Act. Appellees candidly concede (Brief at 6) that Jaycees "is not a place of public accommodation to which women will be denied equal access." However, appellees embrace the reasoning employed by the trial court in its interpretation of the Act. The trial court concluded "[I]t is not necessary that there be a building . . . in order to categorize an existing entity as a place of public accommodation." The court further concluded that "It is sufficient . . . that there is a vast network of services provided the public by the Jaycee organization." With deference, we conclude that to read the Act in this way is to ignore the plain meaning of the statutory language, which has expressly defined the term "place of public accommodation."

Accordingly, we hold that appellees have failed to demonstrate that there is a likeli-

---

4. Jaycees is a Missouri corporation with headquarters in Oklahoma. It functions as the "umbrella" organization by chartering state organizations which in turn have local organizations. Thus, the Downtown Jaycees are one of several local organizations within the state organization, *viz.*, the District of Columbia Jaycees, which appellees joined as members under

the Pilot Program initiated by Jaycees in four selected states.

5. Subsection (x) of Section 2202 lists 62 "places," but we have quoted only a few of those places which we deem to be fairly representative of all.

hood of success for their argument that under the Act Jaycees is a "place of public accommodation."

Appellees refer us to decisions rendered by the New Jersey intermediate appellate court and the Massachusetts Commission against Discrimination. In the former case, there was a challenge to the practice of Little League baseball teams permitting only boys to participate in their games. The appropriate agency concluded such action violated a New Jersey statute prohibiting operators of "places of public accommodation" from denying accommodations, advantages or facilities of such places on the basis of sex. *National Organization for Women, Essex County v. Little League Baseball, Inc.,* 127 N.J.Super. 522, 318 A.2d 33 (App.Div.1974), *aff'd* 67 N.J. 320, 338 A.2d 198 (1974).[6]

As a preliminary matter, the court was confronted with the issue of whether the Little League was a place of public accommodation within the meaning of the statute. The court noted that all sports activities sponsored by Little League Associations took place on ball fields provided by municipal governments. The court concluded:

> The "place of public accommodation" in the case of Little League is obviously the ballfield at which tryouts are arranged, instructions given, practices held and games played. [*Id.* at 318 A.2d 39.]

Jaycees' operation in the District of Columbia differs from the situation in Little League. Unlike the league of baseball teams, Jaycees does not utilize any one particular facility provided by municipal government for its entire operation. In addition, although Jaycees sponsors civic activities at various public places such as hotels, restaurants, or even a street in the case of the Soap Box Derby, it does not control these areas to the same extent as does the Little League. Equally important, Jaycees permits the general public to par-

ticipate in its special events, whereas the baseball team did not.

Viewed in its factual context, we are of the opinion that *Little League* stands for the proposition that a municipally owned ballpark at which the activities of a baseball league are conducted is a "place of public accommodation." As such, the case is not applicable to the present situation and the trial court's reliance on it was inappropriate.

The Massachusetts case was a determination by a Single Commissioner that:

> [T]he membership policy and practices of the U. S. Jaycees and the Massachusetts Jaycees qualify each organization as a place of public accommodation. They meet the statutory requirements. They are a place; they are public; and they are a public accommodation.

Specifically, the Commissioner concluded that the Jaycees, which operated out of a particular office, became a place of public accommodation "[b]ecause of the nature of the membership and the services, benefits and activities [they] provided" in public places.

In assessing the Massachusetts Commission's decision, we note the difference between the state's statute and the pertinent part of the Act in our case. Here, the Act proscribes discrimination in any place of public accommodation and expressly defines "places of public accommodation" as "all places included in the meaning of such terms as ... hotels ..." and then lists more than 60 other similar places. In contrast, the Massachusetts statute defines a place of public accommodation as "any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public, and, without limiting the generality of this definition, whether or not it be an inn, tavern, hotel, ...." The Massachusetts statute is more broadly worded than the Act and we are

---

6. Since the appeal was taken from an administrative agency order, the appellate court's review was deferential. "[W]e are warranted in placing considerable weight on the construction of the statute ... by the administrative

agency charged by the statute with the responsibility of making it work." *Id.*, 318 A.2d at 37. In contrast, the appeal in this case is taken from an order of the trial court, not an administrative agency.

not persuaded the Commission's decision has weight in our case.[7]

■ We take up now the court's other interpretation of the Act which led to the grant of a preliminary injunction upon the basis of appellees' complaint. The Act in Section 2251 proscribes sex discrimination by an "educational institution," and defines this term as:

any public or private institution including an academy, college, elementary or secondary school, extension course, kindergarten, nursery, professional, secretarial, technical or vocational school, and includes an agent of an educational institution. [§ 6–2202(h).]

Upon this record it must be concluded that appellees have failed to show likely success in asserting Jaycees is an educational institution as defined by the Act if the term "educational institution" is afforded its plain meaning. An educational institution is one in which professors or teachers, using instructional material, follow a curriculum resulting in the increased skill or knowledge of their students. Although it is not necessary that a degree or certificate be awarded, other indicia of accomplishment, such as credits, are generally required. Appellant engaged in no such activity here and does not have an "institution" conducting an education program.[8]

■ We turn now to the contract law which the trial court concluded had established a likely ground for success on the merits. Appellees' argument of this theory is that Jaycees is authorized by law to waive its bylaws. They point to the fact that Jaycees did conduct an experimental program by which selected State Chapters, including the District of Columbia Jaycees, were authorized for a specific period of time to accord membership, as distinguished from associate membership, to females between the ages of 18 and 35. Appellees' argument is that appellant, having so agreed, may not now avoid its obligation to continue appellees as members. However, Jaycees from the beginning of the Pilot Program made clear that the issue of modifying the bylaw to extend membership to females would be put to debate and vote at a future annual meeting. State chapters were meticulously advised that membership, as distinguished from associate membership, for women was experimental. Upon the conclusion of the Pilot Program, a clear majority voted at the annual meeting against such a change of the bylaw. Under these circumstances we are not persuaded that appellees were apt to succeed with their claim at trial that appellant changed the bylaw or otherwise obligated itself to continue appellees' membership.

As to the estoppel theory that appellees persuaded the trial court was likely to prevail on the merits of their complaint, they contend that there was no evidence that Jaycees ever informed them *individually* that the Pilot Program was only of temporary duration. It follows, according to their argument, that Jaycees is estopped

---

7. The Minnesota Supreme Court, by a closely divided vote, concluded in the *McClure* case that Jaycees was "selling memberships" and hence became a "public business facility." As such, the court concluded the statute proscribing sex discrimination in places of public accommodation was applicable. We agree with the dissent by Chief Justice Sheran, in which he states:

I cannot believe that the members of the Minnesota legislature ... *thought the Junior Chamber of Commerce, a service organization to be "a place of public accommodation."* The obligation of the judiciary is to give that meaning to words accorded by common *experience and understanding. To go* beyond this is to intrude upon the policy-making function of the legislature. The majority does that in this case....

8. The testimony of "educational advantages" experienced by some of appellees as a result of their membership in the Downtown Chapter of the District of Columbia Jaycees is an oft-heard truism that all of life is an education. As to the provisions of the bylaws which provide that one of the Jaycees' purposes is to serve "as a supplementary education institution to provide [young men] with opportunity for personal development and achievement ...", this proviso, in our view, merely reiterates an obvious goal of the organization to serve the community by developing generally, but not as an educational institution, the abilities of its members and associate members.

from denying them a continuation of their membership.

 However, demonstration of a promise is a prerequisite to invocation of the doctrine of promissory estoppel. *See Bender v. Design Store*, D.C.App., 404 A.2d 194, 195 (1979). There was no evidence that appellant ever promised membership to appellees on a continuing basis beyond the time limit of the Pilot Project. Hence, it seems unlikely that there can be a successful assertion of promissory estoppel in this case.

In sum, our task in reviewing the propriety of the court's issuance of a preliminary injunction is not to determine the case on the merits, but to determine its likelihood of success. Here, the complaint asserts that Jaycees, contrary to the Act, had engaged in sex discrimination in "a place of public accommodation" and an "educational institution." However, the record reflects that Jaycees maintains in the District neither a place of public accommodation nor an educational institution as the Act defines these terms. Under these circumstances, we are constrained to hold the court erred in concluding appellees were apt to bring themselves within the terms of the Act.

The complaint also alleges that Jaycees modified its membership bylaw to accept appellees as members and then breached its promise to continue them as members. There was no evidence that Jaycees modified its bylaw; on the contrary, the membership of Jaycees expressly reaffirmed that bylaw by an action at its annual meeting which is not here challenged. Accordingly, we are satisfied that appellees are unlikely to succeed with their claim that Jaycees breached any contractual obligation by denying appellees continuing membership. Similarly, there was no evidence of any promise to appellees by Jaycees to continue them as members beyond the period of the Pilot Program. Hence appellees' chance of prevailing on the merits on this part of their claim seems slim.

Accordingly, we conclude that the trial court should have refused to enter the pre-

liminary injunction; hence we reverse and remand.

*So ordered.*