THE UNITED STATES JAYCEES *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION & others.

Middlesex. March 7, 1983. — April 3, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Anti-Discrimination Law,* Public accommodation, Association. *Words,*
  "Place of public accommodation."

The United States Jaycees, a nonprofit corporation organized to promote "the
  growth and development of young men's civic organizations," is not a
  "place of public accommodation" within the meaning of G. L. c. 272,
  § 92A. [600-608] ABRAMS, J., with whom HENNESSEY, C.J., and
  LIACOS, J., join, dissenting.

Where the Massachusetts chapter of The United States Jaycees did not appeal
  from a decision of the Massachusetts Commission Against Discrimina-
  tion that the Jaycees is a "place of public accommodation" under G. L.
  c. 272, § 92A, and where this court, on appeal by The United States
  Jaycees from the commission's decision, held that The United States
  Jaycees was not a "place of public accommodation," this court ordered
  the matter remanded to the commission for a determination whether The
  United States Jaycees, in its dealings with the Massachusetts Chapter
  and its activities in Massachusetts, had violated G. L. c. 272, § 98.
  [608-610] ABRAMS, J., with whom HENNESSEY, C.J., and LIACOS, J.,
  join, concurring in part and dissenting in part.

CIVIL ACTION commenced in the Superior Court Department
on July 31, 1981.

The case was reported by *Hallisey,* J. The Supreme Judicial
Court granted a request for direct review.

*Carl D. Hall, Jr.,* of Oklahoma (*Maria J. Woodford* with
him) for the plaintiff.

*Margaret L. Dale* for the defendant.

*Danielle E. deBenedictis* (*Robert S. Brintz* with her) for the
interveners.

*Marjorie Heins & Dianne Foster,* for Massachusetts Civil
Liberties Union Foundation & another, amici curiae, submitted
a brief.

LYNCH, J. This case presents the question whether The United States Jaycees (U.S. Jaycees) is a "place of public accommodation" within the meaning of G. L. c. 272, §§ 92A and 98.[1] In

[1] General Laws c. 272, § 92A, as amended through St. 1979, c. 595, § 1, provides in relevant part: "A place of public accommodation, resort or amusement within the meaning hereof shall be defined as and shall be deemed to include any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public and, without limiting the generality of this definition, whether or not it be (1) an inn, tavern, hotel, shelter, roadhouse, motel, trailer camp or resort for transient or permanent guests or patrons seeking housing or lodging, food, drink, entertainment, health, recreation or rest; (2) a carrier, conveyance or elevator for the transportation of persons, whether operated on land, water or in the air, and the stations, terminals and facilities appurtenant thereto; (3) a gas station, garage, retail store or establishment, including those dispensing personal services; (4) a restaurant, bar or eating place, where food, beverages, confections or their derivatives are sold for consumption on or off the premises; (5) a rest room, barber shop, beauty parlor, bathhouse, seashore facilities or swimming pool, except such rest room, bathhouse or seashore facility as may be segregated on the basis of sex; (6) a board walk or other public highway; (7) an auditorium, theatre, music hall, meeting place or hall, including the common halls of buildings; (8) a place of public amusement, recreation, sport, exercise, or entertainment; (9) a public library, museum or planetarium; or (10) a hospital, dispensary or clinic operating for profit; provided, however, that with regard to the prohibition on sex discrimination, this section shall not apply to any corporation or entity authorized, created or chartered by federal law for the express purpose of promoting the health, social, educational vocational, and character development of a single sex; provided, further, that with regard to the prohibition of sex discrimination, those establishments which rent rooms on a temporary or permanent basis for the exclusive use of persons of the same sex shall not be considered places of public accommodation and shall not apply to any other part of such an establishment."

General Laws c. 272, § 98, as amended through St. 1979, c. 595, § 2, provides in pertinent part: "Whoever makes any distinction, discrimination or restriction on account of race, color, religious creed, national origin, sex, deafness, blindness, or any physical or mental disability or ancestry relative to the admission of any person to, or his treatment in, any place of public accommodation, resort or amusement, as defined in section ninety-two A, or whoever aids or incites such distinction, discrimination or restriction, shall be punished by a fine of not more than three hundred dollars or by imprisonment for not more than one year, or both, and shall forfeit to any person aggrieved thereby not less than one hundred nor more than five hundred dollars; but such person so aggrieved shall not recover against more than one person by reason of any one act of distinction, discrimination or restriction. All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement, subject only to the conditions and limitations

a complaint brought before the Massachusetts Commission Against Discrimination (MCAD), fourteen women alleged that the U.S. Jaycees' and the Massachusetts Jaycees' men-only membership policies amounted to unlawful sex discrimination in violation of G. L. c. 272, §§ 92A and 98. On January 27, 1981, an MCAD Commissioner decided that the U.S. Jaycees and Massachusetts Jaycees each constituted a "place of public accommodation" as defined under G. L. c. 272, § 92A, and concluded that the refusal by these organizations to treat women as members of equal standing with men constituted a violation of G. L. c. 272, § 98. The Commissioner ordered that women be accorded equal membership status in both organizations, and that order was affirmed without modification on July 13, 1981, by a full vote of the MCAD. The U.S. Jaycees then filed a petition in the Superior Court pursuant to G. L. c. 151B, § 6, seeking review of the MCAD's final order.[2] On July 29, 1982, a judge of the Superior Court reported the case to this court.

The U.S. Jaycees challenges the MCAD's order on several grounds. First, the U.S. Jaycees argues that the statutory category of a "place of public accommodation" was never meant to include nonprofit membership organizations such as the Jaycees. Further, it submits that if the MCAD's interpretation of the statutory language is upheld, this will result in an abridgement of the Jaycees' constitutional right to freedom of association, and, as so construed, G. L. c. 272, § 92A, would also be rendered void for vagueness. Finally, the U.S. Jaycees argues that the MCAD's application of the statute to the organization's national activities will result in impermissible extraterritorial effect being given to a law of Massachusetts.[3] We find

established by law and applicable alike to all persons. This right is recognized and declared to be a civil right."

[2] The Massachusetts Jaycees have not independently sought review of the MCAD's order.

[3] Contemporaneously with the complaint brought against the U.S. Jaycees in this case, the organization filed a complaint in the United States District Court for the District of Massachusetts. In that proceeding, the U.S. Jaycees sought a determination that the MCAD proceedings infringed their members' rights of freedom of association, and reserved the right to litigate their constitutional claims in Federal court, under the authority of *England* v.

it unnecessary, however, to consider any arguments beyond the first and most basic one which the U.S. Jaycees advances. Based upon the plain wording of G. L. c. 272, § 92A, and a survey of the relevant case law, we hold that the U.S. Jaycees is not a "place of public accommodation." In so holding, we direct that the order of the MCAD be reversed.

The facts of this case are not in dispute. The U.S. Jaycees is a tax-exempt nonprofit corporation organized under the laws of the State of Missouri, with its headquarters located in Tulsa, Oklahoma. It was incorporated in 1920 under the name United States Junior Chamber of Commerce. In 1965, it changed its name to The United States Jaycees. The U.S. Jaycees' by-laws define its purpose as follows: "This corporation shall be a non-profit corporation, organized for such educational and charitable purposes as will promote and foster the growth and development of young men's civic organizations in the United States, designed to inculcate in the individual membership of such organization a spirit of genuine Americanism and civic interest, and as a supplementary educational institution to provide them with opportunity for personal development and achievement and an avenue for intelligent participation by young men in the affairs of their community, state and nation, and to develop true friendship and understanding among young men of all nations."

---

*Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964). See *United States Jaycees* v. *Edmonds* (D. Mass., C.A. No. 79-715-S). The Federal court denied the U.S. Jaycees' request to enjoin the proceedings of the MCAD.

In another pending action, the fourteen complainants before the MCAD have brought suit in the Superior Court alleging violations of contractual and constitutional rights. *D'Agostino* v. *Massachusetts Jaycees*, Superior Court, Middlesex County, C.A. No. 78-6643 (1978). The constitutional right alleged to have been violated in *D'Agostino* is contained in art. 1 of the Declaration of Rights of the Massachusetts Constitution, as amended by art. 106 of the Amendments to the Massachusetts Constitution, the Massachusetts Equal Rights Amendment. The parties have neither briefed nor argued these issues before us. Given this fact and our disposition of the question whether the Jaycees is a "place of public accommodation," we leave the resolution of these additional issues to another day.

There are several interlocking categories of membership in the U.S. Jaycees: local organization membership, State organization membership, individual membership, and associate membership. There are currently over 290,000 individual members of the U.S. Jaycees, each of whom also belongs to a State and a local Jaycees chapter.

The by-laws of the U.S. Jaycees provide that individual membership is limited to men between the ages of eighteen and thirty-five. Associate membership is available to persons (including women, and men over thirty-five) and to businesses that are not qualified to be individual members. An associate member can participate in all the programs offered by the organization, although such a member may not vote, hold office, or receive an award.

The ultimate policy-making body of the U.S. Jaycees is an annual convention, attended by delegates from each local chapter. These conventions have the authority to change the by-laws of the organization. At two conventions, in June, 1975, and June, 1978, the membership considered by-law revisions to admit women as individual members. On both occasions, the proposed revisions were defeated. In September, 1981, individual members of the U.S. Jaycees voted in a national mail referendum on the question of amending the by-laws to admit women as individual members at the option of local chapters. The amendment was defeated. The vote was 67% against and 33% for the amendment.

In 1975, after the rejection at the annual convention of the by-law amendment, the executive committee of the U.S. Jaycees established a pilot program to allow local chapters in up to five States to accept women as regular individual members of local and State chapters. Three jurisdictions, Alaska, District of Columbia, and Massachusetts voted to participate. Initially, the pilot program was authorized for six months. The program was terminated shortly after the rejection of the by-law amendment by the June, 1978, convention. On July 22, 1978, the U.S. Jaycees' president issued a statement that the membership by-law would be strictly construed and enforced, and that after December 1, 1978, State or local chapters which violated the by-law would face charter revocation by the U.S. Jaycees.

The U.S. Jaycees provides technical assistance, advice, training, and support to State and local chapters. This assistance is provided for recruitment, membership, and chapter organization as well as for programs and services. The actual choice and conduct of programs is left to the State and local organizations, which have authority to determine the programs and activities in which they will engage, so long as the activities are consistent with the general purposes of the U.S. Jaycees. The U.S. Jaycees is funded primarily through the collection of membership dues and privately sponsored programs.

In the past, the U.S. Jaycees maintained a Northeast regional office in Massachusetts, for which it rented office space in a building owned by the Massachusetts Jaycees. During that time, a full time U.S. Jaycees regional representative worked in the office. However, the U.S. Jaycees' operations in Massachusetts are currently limited to contacts and involvement with State and local Jaycees officials.

Local Jaycees chapters plan and implement an impressive array of community service programs and fund-raising activities. With the exception of certain projects that are sponsored by the national organization, these programs and activities are selected and carried out autonomously by the local chapters, with no need for prior approval by the State or national organization. From time to time, the U.S. Jaycees prepares and sends out informational material on possible projects and activities.

The projects which the Jaycees and their local chapters have sponsored include, inter alia, tot lots, Christmas parties, Boston harbor cruises for the elderly, a youth center in Winchester, a cleanup of the Back Bay area, a Special Olympics, a Fun Run for Muscular Dystrophy, a Boy Scout troop and the Massachusetts Youth Leadership Seminar. The Lowell Jaycees established a Jaycees housing corporation, which became the codeveloper of a $3.7 million housing project for the elderly in Lowell. Participation in these programs was open to the general public on a nondiscriminatory basis. Men and women could and did run in the road race, go on the harbor cruise, and attend the Christmas parties.

The national, State, and local Jaycees organizations all devote considerable time and energy to the recruitment and retention of new members. Both the national and State organizations give awards in recognition of successful recruitment efforts. Nationally, over 150,000 new members are recruited each year.

1. In arriving at its conclusion that the U.S. Jaycees constitutes a "place of public accommodation," the MCAD candidly characterized this result as "not self-evident," noting that "[a] membership organization is certainly different from the traditional places of public accommodation, such as an inn or restaurant." Yet, by employing a somewhat tortuous analysis, the MCAD's ensuing review of the U.S. Jaycees' activities in fact yielded the opposite result, i.e., the inclusion of the organization within the statutory category of a "place of public accommodation."

To start with, the MCAD observed that the State and local Jaycees chapters certainly do meet in physical "place[s]" within Massachusetts, albeit a large number of different ones. Since a "sufficiently strong nexus" exists between the U.S. Jaycees and the State and local organizations, when the latter two meet at a "place" within Massachusetts, it can be hypothesized that the national organization is meeting at that "place" also. The membership of the U.S. Jaycees is demonstrably "public": all males who are between the ages of eighteen and thirty-five and who pay the dues are admitted to the organization. If the assumption that membership in the national Jaycees organization can be tied to a "place" in Massachusetts is then combined with the observation that such membership is "public," it is possible to reach the same conclusion as the MCAD, that the U.S. Jaycees is a "place of public accommodation" within the meaning of G. L. c. 272, § 92A. While this line of reasoning is relatively easy to follow, it is hard to accept.

As a general rule, in reviewing the interpretation of a statute by an administrative body, a court shall "give due weight to the experience, technical competence, and specialized knowledge of the agency." G. L. c. 30A, § 14 (7). However, in the final analysis, "[t]he duty of statutory interpretation is for the courts." *School Comm. of Wellesley* v. *Labor Relations Comm'n,*

376 Mass. 112, 116 (1978), quoting *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964). We are guided in this task by several tools of statutory construction outlined by the Legislature and by common law precedent. General Laws c. 4, § 6, provides the general standard that, unless a term in a statute is "technical," "words and phrases shall be construed according to the[ir] common and approved usage." See *Commonwealth* v. *Thomas*, 359 Mass. 386, 387 (1971); *Tilton* v. *Haverhill*, 311 Mass. 572, 577 (1942). Whether a membership organization can be characterized as a "place of public accommodation" hinges initially on the meaning attributed to the word "place": "A place of public accommodation . . . shall be deemed to include any *place* . . . which is open to and accepts or solicits the patronage of the general public . . ." (emphasis added). G. L. c. 272, § 92A.

"Place" is not a "technical" word. It has no narrowly defined, special meaning aside from its common definition. Further, the legislative history of G. L. c. 272, § 92A, provides us with no basis for speculating that any such "technical" definition was envisioned by those drafting or amending the statute.[4] In com-

---

[4] In interpreting the legislative history of G. L. c. 272, § 92A, the MCAD's reliance upon the wording of certain amendments to the statute is misplaced. In 1971, the so called "private club" exemption was deleted from the General Laws by St. 1971, c. 418, § 1, a fact to which the MCAD accorded weight in its determination that the U.S. Jaycees is a "place of public accommodation." The former exemption provided that "no place shall be deemed to be a place of public accommodation, resort or amusement which is owned or operated by a club or institution whose products or facilities or services are available only to its members and their guests nor by any religious, racial or denominational institution or organization, nor by any organization operated for charitable or educational purposes." The deletion of this exemption is irrelevant to the U.S. Jaycees' case, since in its brief the organization concedes that if it does constitute a "place of public accommodation," its activities are sufficiently "public" so that a private club exemption would be unavailable in any event. The critical question is, of course, *whether* the U.S. Jaycees is a "place of public accommodation."

The MCAD, and the dissent, *infra* at 613, also rely on a 1978 amendment to G. L. c. 272, § 92A, which added an exemption for "any corporation or entity authorized, created or chartered by federal law for the express purpose of promoting the health, social, educational, vocational, and character development of a single sex." St. 1978, c. 331. By a process of negative inference, the MCAD observed that since the U.S. Jaycees do not qualify for the

mon usage, a "place" is defined as a "physical environment." Webster's Third New Int'l Dictionary 1727 (1968). See also vol. VII Oxford English Dictionary 926 (1978) ("An open space in a city . . ."); Black's Law Dictionary 1034 (5th ed. 1979) ("In its primary and most general sense [place] means locality, situation or site and it is also used to designate an occupied situation or building"). On its face, G. L. c. 272, § 92A, does not apply to a membership organization, since such an organization does not fall within the commonly accepted definition of a "place."

In its construction of the statute, the MCAD readily dispensed with this requirement of physical location, relying on the rationale that since all such organizations must meet at "places," the statutory mandate is satisfied. Aside from the rather sweeping nature of the MCAD's analysis, potentially making all membership organizations candidates for "place of public accommodation" status, several additional points should be noted. First, the MCAD's treatment of the word "place" is inappropriate, since it ignores a well-accepted canon of statutory construction "that every word of a legislative enactment is to be given force and effect." *Chatham Corp.* v. *State Tax Comm'n,* 362 Mass. 216, 219 (1972). This point is further buttressed by the fact that all of the specifically-enumerated examples of places of public accommodation (an inn, tavern, gas station, etc.), following the general definition in G. L. c. 272, § 92A, do come within the commonly understood definition of a "place" cited above. In addition, the one Massachusetts decision addressing the application of a modern version of G. L. c. 272, § 92A, to an enterprise not falling within one of these enumerated categories, *Local Fin. Co.* v. *Massachusetts Comm'n Against Discrimination,* 355 Mass. 10

exemption, which applies only to federally chartered organizations such as Boys Clubs of America and Boy Scouts of America, this is an indication of a legislative intent to treat organizations like the Jaycees as places of public accommodation. We can find no support in the legislative history of St. 1978, c. 331, for this interpretation. Further, although we do not find this fact dispositive, the single gender emphasis of the Boys Clubs' and Boy Scouts' activities clearly far exceeds that of the Jaycees, who permit women to attend membership meetings and to participate fully in all Jaycees-sponsored activities.

(1968), simply extended the statutory definition to another type of physical facility, a loan office. Paying heed to the plain wording of G. L. c. 272, § 92A, we decide that the U.S. Jaycees does not fall within the general or specific definitions of a "place of public accommodation" provided by the statute. The U.S. Jaycees maintains no physical "place" of operations in Massachusetts, nor does the organization resemble any of the types of physical facilities enumerated in the specific examples following the statute's general definition of a "place of public accommodation."

Had the Legislature intended to include membership organizations within the scope of the nondiscrimination provisions of G. L. c. 272, § 92A, it could have done so easily. It chose not to, and that decision is one that this court is ill-equipped to alter. The language of G. L. c. 272, § 92A, is unambiguous: "place of public accommodation" must be, as an initial matter, a "place," a criterion which the U.S. Jaycees organization fails to meet.

The question whether a nonprofit membership organization is a place of public accommodation is one of first impression in Massachusetts. Three recent cases in other jurisdictions, however, are directly relevant to this inquiry. The highest appellate courts in Alaska, the District of Columbia, and Minnesota, have ruled on the precise issue whether the U.S. Jaycees constitutes a "place of public accommodation," under the applicable State law. Both the Supreme Court of Alaska and Court of Appeals of the District of Columbia have found that the U.S. Jaycees does not constitute a "place of public accommodation." *United States Jaycees* v. *Richardet,* 666 P.2d 1008 (Alaska 1983); *United States Jaycees* v. *Bloomfield,* 434 A.2d 1379 (D.C. 1981).

The Alaska case is particularly noteworthy because the relevant statute, Alaska Stat. § 18.80.300(7) (1981), closely tracks G. L. c. 272, § 92A.[5] As in Massachusetts, a "public

---

[5] Alaska Stat. § 18.80.300(7) defines "public accommodation" as "a place which caters or offers its services, goods or facilities to the general public and includes a public inn, restaurant, eating house, hotel, motel, soda foun-

accommodation" is defined in terms of a "place," which in the view of the Alaska court "[does] not encompass a service organization lacking a fixed geographical situs." *United States Jaycees* v. *Richardet, supra* at 1011. Following its general definition of a public accommodation, the Alaska statute contains a number of specific examples, again comparable to the detailed listing in the Massachusetts statute. Finally, the concluding catch-all provision ("and all other public amusement and business establishments") in the Alaska law is a reasonable approximation of the prefatory catch-all provision ("without limiting the generality of this definition") found in G. L. c. 272, § 92A.

In *United States Jaycees* v. *Bloomfield,* 434 A.2d 1379 (D.C. 1981), the Court of Appeals of the District of Columbia also held that the U.S. Jaycees did not constitute a "place of public accommodation." Observing that the U.S. Jaycees "does not operate from any particular place within the District of Columbia," the court rejected arguments that the organization could be viewed somehow to fit within the statutory category, since "to read the [District of Columbia Human Rights] Act in this way is to ignore the plain meaning of the statutory language, which has expressly defined the term 'place of public accommodation.'" *Id.* at 1381. Like the Massachusetts statute, D.C. Code Ann. § 6-2202(x)[6] first defines a "place of public accommodation" in

---

tain, soft drink parlor, tavern, night club, roadhouse, place where food or spirituous or malt liquors are sold for consumption, trailer park, resort, campground, barber shop, beauty parlor, bathroom, resthouse, theater, swimming pool, skating rink, golf course, cafe, ice cream parlor, transportation company and all other public amusement and business establishments, subject only to the conditions and limitations established by law and applicable alike to all persons."

[6] As appearing in D.C. Code Ann., now recodified as § 1-2502 (24) (Michie 1981), "place of public accommodation" is defined to mean "all places included in the meaning of such terms as inns, taverns, road houses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest; restaurants or eating houses, or any place where food is sold for consumption on the premises; buffets, saloons, barrooms, or any store, park or enclosure where spirituous or malt liquors are sold; ice cream parlors, confectionaries, soda fountains and all stores where ice cream, ice and fruit preparation or their derivatives, or where beverages of any kind are retailed for consumption on

terms of a "place." Again, as in G. L. c. 272, § 92A, this general definition is followed by a list of specific examples which generally replicate the examples found in the Massachusetts law. One minor difference between the statutes, which led the District of Columbia court to characterize the Massachusetts law as "more broadly worded," 434 A.2d, *supra* at 1382, lies in the catch-all introductory provisions of both statutes. The District of Columbia statute expands the potential scope of its list of enumerated examples to similar physical locations by prefacing their descriptions with the comment that the definition comprises "all places included in the meaning of such terms as [list of specific examples]"; G. L. c. 272, § 92A, enlarges its enumeration by stating that, in providing such a listing, it is not "limiting the generality of this definition." We do not attach the significance that the District of Columbia court did to this variation in the wording between the two statutes, although we do concur with its ruling that the U.S. Jaycees is not a "place of public accommodation."

A statute which possesses a different internal structure, and which focuses on discriminatory conduct rather than on the locations where such discrimination occurs, is another matter. Minn. Stat. § 363.01(18) (1982) exemplifies the former, more expansive type of public accommodation statute[7]. In turn, the

---

the premises; wholesale and retail stores, and establishments dealing with goods or services of any kind, including, but not limited to, the credit facilities thereof; banks, savings and loan associations, establishments of mortgage bankers and brokers, all other financial institutions, and credit information bureaus; insurance companies and establishments of insurance policy brokers; dispensaries, clinics, hospitals, bath-houses, swimming pools, laundries and all other cleaning establishments; barber shops, beauty parlors, theatres, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, trailer camps, resort camps, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiards and pool parlors; garages, all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus; public halls and public elevators of buildings and structures, occupied by two (2) or more tenants, or by the owner and one (1) or more tenants."

[7] A "place of public accommodation" is defined under Minn. Stat. § 363.01(18) (1982) to be "a business, accommodation, refreshment, enter-

Supreme Court of Minnesota has found that the U.S. Jaycees is a "place of public accommodation" within the "unusually broad" contours of that State's law.[8] *United States Jaycees* v. *McClure*, 305 N.W.2d 764, 766 (Minn. 1981). The Minnesota statute at issue was a revision of an earlier law which had relied upon an enumerated list of examples of public accommodations, the *earlier* law being not unlike G. L. c. 272, § 92A. The Supreme Court of Minnesota commented on this distinction between the two types of public accommodation statutes: "[W]hile the older statute contemplated only certain fixed and mobile sites, the new statute encompasses a 'business facility of any kind,' whether fixed or mobile. While the older statute concentrated on the kinds of sites where discrimination would be prohibited, the new statute focuses on *conduct* in which discrimination would be prohibited and thus speaks not of a business facility *where* goods and privileges are offered, but rather of 'a business . . . facility of any kind . . . *whose* goods . . . [and] privileges are . . . offered, sold, or otherwise made available to the public.'" 305 N.W.2d at 768, quoting Minn. Stat. § 363.01(18) (1967).

---

tainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public."

[8] The dissent, *infra* at 612-613, places great weight on the Supreme Court of Minnesota's determination. This issue had been certified to that court by the United States District Court for the District of Minnesota. After the Supreme Court rendered its decision on the interpretation of the Minnesota statute, the District Court went on to dismiss the U.S. Jaycees' claims that the Minnesota public accommodations law violated their right to freedom of association and that the law was constitutionally vague and overbroad. *United States Jaycees* v. *McClure*, 534 F. Supp. 766 (D. Minn. 1982). On appeal, the Eighth Circuit reversed. *United States Jaycees* v. *McClure*, 709 F.2d 1560 (8th Cir. 1983), prob. juris. noted sub nom. *Gomez-Bethke* v. *United States Jaycees*, 464 U.S. 1037 (1984). The court held that the Minnesota public accommodations law "is invalid on two alternative and independent grounds: (1) it directly interferes with the Jaycees' First Amendment right of association without sufficient justification; and (2) it is void for vagueness because it supplies no ascertainable standard for the inclusion of some groups as 'public' and the exclusion of others as 'private.'" *Id.* at 1578. Other than noting this holding, we express no opinion on it, as these issues are not before us. See note 3 *supra*.

The contrast between a statute such as Minn. Stat. § 363.01(18) and G. L. c. 272, § 92A, is further reflected by the approach taken by this court in *Local Fin. Co.* v. *Massachusetts Comm'n Against Discrimination*, 355 Mass. 10 (1968), noted above. Taking a flexible view of the list of physical *sites* to which G. L. c. 272, § 92A, is explicitly applied, we determined that a loan office could be, in effect, "added" to the list without running afoul of the statute's general definition of a "place of public accommodation." 355 Mass. at 13. However, the MCAD's interpretation of G. L. c. 272, § 92A, as including the U.S. Jaycees does not call for the mere addition of another physical "site" to the statutory language, but instead it requires the addition of a type of "conduct" (a nonprofit organization's membership policy). Such an interpretation cannot be derived from the plain language or a reasonable construction of G. L. c. 272, § 92A.

In its decision and in its brief on appeal, the MCAD has relied upon two other "place of public accommodation" cases, involving not the U.S. Jaycees but youth sports associations. *National Org. for Women* v. *Little League Baseball, Inc.*, 127 N.J. Super. 522, aff'd mem., 67 N.J. 320 (1974). *United States* v. *Slidell Youth Football Ass'n*, 387 F. Supp. 474 (E.D. La. 1974). In each case, the court held that the sports association or league involved fell within the public accommodation provisions of the relevant statute. 127 N.J. Super., *supra* at 531. 387 F. Supp., *supra* at 486. The MCAD draws an analogy between these cases, which in its view involved organizations rather than "places," and the situation of the Jaycees.

These holdings are inapposite for one important reason. In both cases, although an organization's membership policy was implicated, membership in the relevant entity served effectively as the "ticket" for admission to a particular "place." In *Slidell Youth Football Ass'n, supra* at 477, the "place" was a sports facility containing "two fully equipped football fields, grandstands and a food concession stand enclosed in a chain link fence," the facility being "utilized solely to play SYFA sponsored youth football league games." In *Little League Baseball,*

*Inc., supra* at 531, the "place of public accommodation . . . [was] obviously the ball field at which tryouts are arranged, instructions given, practices held and games played." It is important to distinguish the case of a discriminatory membership policy (which the U.S. Jaycees concededly practices) from circumstances where the denial of membership is used as a method for denying access to a particular place. See *Wesley* v. *Savannah,* 294 F. Supp. 698, 701-702 (S.D. Ga. 1969) (discriminatory membership policy of golfers' association distinguished from use of that policy to deny access on basis of race to tournament sponsored by the association). It is only the latter type of discrimination that is covered by conventional place of public accommodation statutes. In turn, the U.S. Jaycees clearly does not fall within this characterization: all of the events that the organization promotes are open to the public, men and women alike. Whatever the wisdom of the U.S. Jaycees' decision to maintain a discriminatory membership policy, the policy is not used as a means to deny women access to Jaycees-sponsored events or activities.

2. Although what we have said dispose of the only issue decided by the MCAD and challenged by the U.S. Jaycees on appeal, we think it appropriate to note certain principles that may apply to any further consideration of this case.

First, while the U.S. Jaycees does not constitute a place of public accommodation, the organization may not discriminate on the basis of sex in its admission to, or treatment of any person in a place of public accommodation. G. L. c. 272, § 98. The disqualification of women from voting, holding office, and receiving awards may constitute discrimination "in the treatment" of women if it occurs in a place of public accommodation. If this is so the plethora of places that fall within the definition of "[a] place of public accommodation" in G. L. c. 272, § 92A, would appear greatly to limit the places at which the U.S. Jaycees could conduct a meeting in Massachusetts, or jointly conduct a meeting with the Massachusetts Jaycees, without violating the law.

Because no one has appealed the MCAD's determination that the Massachusetts Jaycees is a place of public accommodation, the prohibition of G. L. c. 272, § 98, against aiding or inciting any distinction, discrimination, or restriction on account of sex in the treatment of a person in any place of public accommodation means that, apart from the constitutional considerations mentioned below, neither the U.S. Jaycees nor the Massachusetts Jaycees may discriminate against women in the admission to, or treatment on, the property of the Massachusetts Jaycees.

None of these questions is presented in this appeal. If they were, it might be necessary to decide the constitutional questions raised by the Jaycees which we have not addressed.[9] In any case, these questions should be considered by the MCAD in the first instance. It may be that the complaints filed with the MCAD may fairly be read to raise these issues or that the complaints may be amended to raise them.

For the reasons discussed above, we conclude that the U.S. Jaycees is not a place of public accommodation within the

---

[9] The Massachusetts Equal Rights Amendment may also be relevant in analyzing the rights of women to equal status in Jaycees' organizations. To be sure, the constitutional prohibition of discrimination based on sex expressed in art. 1 of the Declaration of Rights is directed against State action. This has been the universal construction of similar Equal Rights Amendments in other States. See *Schreiner* v. *McKenzie Tank Lines & Risk Management Servs.*, 408 So. 2d 711, 715-716 (Fla. Dist. Ct. App. 1982); *Murphy* v. *Harleysville Mut. Ins. Co.*, 282 Pa. Super. 244, 254-257 (1979). Perhaps it is manifest that there is no State action involved in the U.S. Jaycees' discrimination against women in membership, even if this court were to take a broader view of what constitutes State action than has the United States Supreme Court. See *Phillips* v. *Youth Dev. Program, Inc.*, 390 Mass. 652, 658 (1983). On the other hand, the protections of constitutional rights introduced in the Massachusetts Civil Rights Act may *not* be limited to State action. See G. L. c. 12, § 11H; G. L. c. 265, § 37 ("whether or not acting under the color of law"). Unlike 42 U.S.C. § 1983 (1970), however, G. L. c. 12, § 11H, appears only to provide a civil remedy against acts of persons that include "threats, intimidation or coercion" in violation of rights secured by State and Federal law. No question of "threats, intimidation or coercion" is directly presented in this appeal, but the membership restrictions as to women that the U.S. Jaycees imposes on State and local chapters might constitute "coercion" within the meaning of those words in G. L. c. 12, § 11H.

meaning of G. L. c. 272, § 92A. A judgment is to be entered in the Superior Court, setting aside the order of the Massachusetts Commission Against Discrimination and remanding the case to the Commission for further consideration in the light of this opinion.

*So ordered.*

ABRAMS, J. (concurring in part and dissenting in part, with whom Hennessey, C.J., and Liacos, J., join). The court correctly states that the MCAD's unappealed determination that the Massachusetts Jaycees and local Jaycees chapters are places of public accommodation within G. L. c. 272, § 98, *ante* at 608-609, subjects The United States Jaycees to the statute's prohibition against aiding or inciting any distinction, discrimination, or restriction in the treatment of women at meetings of the State and local chapters. I concur in that conclusion. The court remands the case to the MCAD for "further consideration" whether an order that The United States Jaycees cease and desist from engaging in such prohibited conduct should be entered. The MCAD's findings, however, establish that The United States Jaycees organization has threatened with charter revocation those local chapters disposed to grant women full membership privileges on a par with men. Such threats clearly put pressure on State and local Jaycees chapters to disqualify women from voting, holding office, and receiving awards at their meetings, and thus constitute incitement of discriminatory treatment at places of public accommodation.

Because the complaints filed with the MCAD allege violations of G. L. c. 272, § 98, and because, as the court acknowledges, G. L. c. 272, § 98, encompasses a prohibition against incitement, it is apparent that the complaints validly challenge The United States Jaycees' conduct in inciting discrimination against women by State or local Jaycees organizations. Rather than occasion further delay in the availability of relief to the class of women before the MCAD, I would remand to the MCAD and direct it to reissue that portion of the original

cease-and-desist order that requires The United States Jaycees to "cease and desist from revoking the Charter of any Jaycee[s] Local Organization Member (local chapter) or State Organization Member (the Massachusetts Jaycees), within the Commonwealth of Massachusetts, or denying any privilege or right of membership, or otherwise discriminating in any manner against a Local or State Organization Member within the Commonwealth of Massachusetts because either extends to women all the rights and privileges of individual or regular membership."[1]

I dissent from that portion of the court's opinion rejecting the MCAD's determination that The United States Jaycees is a "place of public accommodation" within the meaning of G. L. c. 272, §§ 92A and 98. Because the status of State and local Jaycees as "place[s] of public accommodation" is not disputed, the MCAD's decision that the national organization is also a "place of public accommodation" is essential only to that portion of the appealed cease-and-desist order that precludes The United States Jaycees from discriminating on the basis of sex against members or applicants for membership in the national organization who are citizens of Massachusetts. I believe that G. L. c. 272, § 98, reaches such discriminatory conduct.

The court bases its decision that The United States Jaycees organization is insulated from our public accommodation statute on the conclusion that the national organization does not meet the "place" element of the G. L. c. 272, § 92A, definition. The word "place" in G. L. c. 272, § 92A, is properly viewed as "a term of convenience, not of limitation." See *National Org. for Women* v. *Little League Baseball, Inc.*, 127 N.J. Super. 522, aff'd mem., 67 N.J. 320 (1974). In effectuating the Legislature's goal that "public accommodation" be available to citizens of this Commonwealth on a nondiscriminatory

---

[1] Our public accommodation statute would be totally circumvented by a conclusion that an organization like The United States Jaycees is not a place of public accommodation within the Commonwealth, and therefore not subject to our law, yet may, without penalty, cause its agents, the State and local Jaycees, places of public accommodation within the Commonwealth, to discriminate against women in violation of the statute.

basis, we have emphasized that G. L. c. 272, § 92A, should be given "a broad, inclusive interpretation." *Local Fin. Co.* v. *MCAD*, 355 Mass. 10, 14 (1968). So interpreted, the statutory "place" requirement is satisfied if the entity dispensing a "public accommodation" has a physical presence in this Commonwealth. The technical assistance, advice, and training provided by the national organization to its State and local chapters, as well as its joint sponsorship of programs and activities in this Commonwealth, create a sufficiently strong nexus between the local, State, and national organizations to validate the MCAD's conclusion that The United States Jaycees is physically present in Massachusetts.[2] See *United States Jaycees* v. *McClure*, 305 N.W.2d 764, 772 (Minn. 1981)[3] (The United States Jaycees organization is a "place of public accommodation" within Minnesota statute; "place" requirement satisfied by "oft-shifted sites at which the affiliated local chapters hold meetings").[4]

---

[2] In the event the national organization conducts a meeting in Massachusetts under its own aegis, the "place" requirement is clearly satisfied. It is evident, therefore, that G. L. c. 272, § 98, precludes The United States Jaycees from discriminating against women during national conventions held in Massachusetts.

[3] As indicated by the majority, note 8, *supra*, the Minnesota public accommodation statute, construed by the highest court of that State as applicable to The United States Jaycees, was invalidated by a panel of the Eighth Circuit Court of Appeals on the grounds that it unduly interfered with associational rights and was unconstitutionally vague. *United States Jaycees* v. *McClure*, 709 F.2d 1560, 1578 (8th Cir. 1983), prob. juris. noted sub nom. *Gomez-Bethke* v. *United States Jaycees*, 464 U.S. 1037 (1984). Beyond noting the existence of persuasive arguments to the contrary, see *id.* at 1579 (Lay, C.J., dissenting), I do not think it appropriate, given the majority's resolution of the statutory issue, to address in dissent the merits of the Jaycees' constitutional claims.

[4] The majority purport to distinguish two cases relied on by the MCAD, *National Org. for Women* v. *Little League Baseball, Inc.*, 127 N.J. Super. 522, aff'd mem., 67 N.J. 320 (1974), and *United States* v. *Slidell Youth Football Ass'n*, 387 F. Supp. 474 (E.D. La. 1974), in which membership organizations were held subject to the prohibitions of public accommodation statutes. The majority state that "[i]t is important to distinguish the case of a discriminatory membership policy (which the U.S. Jaycees concededly practices) from circumstances where the denial of membership is used as a method for denying access to a particular place. . . . Whatever the

I also find correct the MCAD's determination that The United States Jaycees, because of its nonselective membership policy, is "public," as well as its conclusion that the opportunities for personal development and participation in community affairs the Jaycees offers constitute an "accommodation." See *United States Jaycees* v. *McClure, supra* at 774 ("Leadership skills are 'goods' [and] business contacts and employment promotions are 'privileges' and 'advantages' . . ."). The G. L. c. 272, § 92A, definition of "[a] place of public accommodation" expressly incorporates an "establishment . . . dispensing personal services." To the extent that the court suggests that the Legislature did not intend to include membership organizations within the prohibitions of G. L. c. 272, §§ 92A and 98, it ignores contrary legislative history. In 1978, the Legislature specifically exempted "any corporation or entity authorized, created, or chartered by federal law for the express purpose of promoting the health, social, educational, vocational, and character development of a single sex." St. 1978, c. 331. This exemption would be unnecessary unless the Legislature contemplated that certain membership organizations, such as the Boy Scouts of America, 36 U.S.C. §§ 21-29 (1976) or the Boys' Clubs of America, 36 U.S.C. §§ 691-707 (1976), were otherwise subject to the statutory proscriptions.[5]

Because I believe that the MCAD's determination that The United States Jaycees constitutes a "place of public accommodation" is consistent with both the spirit and the letter of G. L. c. 272, §§ 92A and 98, I would affirm the MCAD's decision.

---

wisdom of the U.S. Jaycees' decision to maintain a discriminatory membership policy, the policy is not used as a means to deny women access to Jaycees-sponsored events or activities." *Ante* at 608. I fail to see the relevance of this distinction under G. L. c. 272, § 98, which prohibits not only sex discrimination in "the admission of any person to . . . any place of public accommodation," but also sex discrimination with regard to "treatment in any place of public accommodation."

[5] The majority attempt to reconcile the explicit statutory exemption of two membership organizations with their conclusion that the Legislature did not intend G. L. c. 272, § 92A, to apply to membership organizations such as the Jaycees, by noting that "the single gender emphasis of the Boys Clubs' and Boy Scouts' activities clearly far exceeds that of the Jaycees." Note 4 *ante.* I think it unlikely that the Legislature, as the majority appear to suggest, meant the application of our public accommodation statute to membership organizations to depend on degrees of discriminatory treatment.